OPINION OF THE COURT
Alexander, J.
Defendant was convicted, upon a jury verdict, of robbery in the first degree (Penal Law § 160.15 [3]) and petit larceny (Penal Law § 155.25). The Appellate Division affirmed the conviction (111 AD2d 870) and the case is before us by leave of the Chief Judge of this court. Defendant argues to us that the *426 trial court erred in refusing, despite his timely request, to instruct the jury that they could draw an unfavorable inference from the failure of the People to call as a witness the complainant’s common-law husband and in precluding comment on that failure in summation to the jury. For the reasons that follow, we conclude that there should be a reversal of the conviction and a new trial ordered.
Miriam Jiminez, the complainant, testified at trial that in the early morning hours of May 17, 1981, she was accosted by two men in the lobby of her apartment building and robbed of $800. Jiminez, who was returning from her mother’s house in The Bronx, where her mother had given her the $800, stopped in a bar near her residence for a short time. Before leaving the bar, she had taken the $800 from her pocketbook and placed it in her right shoe. Upon arriving at her apartment building, she was accosted by two men. She recognized one of them as the defendant herein, someone she knew by first name, having seen him in the neighborhood on prior occasions. Jiminez testified that while his cohort brandished a gun, defendant held a knife to her neck and ordered her to hand over the money. Although Jiminez refused his demand and did not reveal where any money was secreted, defendant immediately grabbed her right shoe, removed the $800 and fled along with his accomplice. Jiminez then rushed to her second floor apartment and told her common-law husband about the incident. She testified, without objection, that her husband looked out the window and observed the defendant, who was also known to the husband, turning the corner on the run. Complainant’s husband was not called to testify during the trial.
During the charge conference following completion of the testimony, defense counsel requested a "missing witness” charge based on the People’s failure to call the complainant’s husband to testify, contending he was "a material witness and under the People’s control”. Notwithstanding that the People did not indicate any position on the matter, the court denied the requested charge.
In his summation defense counsel sought to attack the complainant’s credibility by highlighting the various witnesses who were not called to testify, although they could have corroborated various aspects of her testimony. Thus, defense counsel observed: "The husband. Whose husband? — the complaining witness(’s), husband of seven years. He certainly must *427 have an interest in what happened here.” The People’s objection to these comments was sustained as was their objection to counsel’s further remark that the complaining witness’s testimony as to what her husband saw was "hearsay”, in that "he didn’t make it to you. He didn’t make it under oath and I couldn’t cross-examine him.” The jury was instructed to disregard this latter remark. Defendant’s conviction followed.
Under certain circumstances, the failure of a party to produce at trial a witness who presumably has evidence that would "elucidate the transactions,” requires a trial court, upon a timely request, to instruct the jury that an unfavorable inference may be drawn from the failure of the party to call such witness (People v Rodriguez, 38 NY2d 95, 98; People v Moore, 17 AD2d 57, 59, cert denied 371 US 838; see, Richardson, Evidence § 92, at 65-68 [10th ed]; McCormick, Evidence § 272, at 804-808 [3d ed]). As stated by the Supreme Court, "The rule * * * in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable” (Graves v United States, 150 US 118, 121). This instruction, commonly referred to as a "missing witness charge”, derives from the commonsense notion that "the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party’s cause” (2 Wigmore, Evidence § 285, at 192 [Chadbourn rev ed 1979] quoted in Laffin v Ryan, 4 AD2d 21, 25). Of course, the mere failure to produce a witness at trial, standing alone, is insufficient to justify the charge. Rather, it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party (see, Reehil v Fraas, 129 App Div 563, 566, revd on other grounds 197 NY 64; McCormick, op. cit.; Richardson, op. cit.; 1 CJI [NY] 8.53).
The burden, in the first instance, is upon the party seeking the charge to promptly notify the court that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify. In some instances, *428 this information may be available prior to trial; at other times, it may not become apparent until there has been testimony of a witness at trial. In all events, the issue must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid "substantial possibilities of surprise” (McCormick, op. cit., at 806). Once the party seeking the charge has established prima facie that an uncalled witness is knowledgeable about a pending material issue and that such witness would be expected to testify favorably to the opposing party, it becomes incumbent upon the opposing party, in order to defeat the request to charge, to account for the witness’ absence or otherwise demonstrate that the charge would not be appropriate. This burden can be met by demonstrating that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not "available”, or that the witness is not under the party’s "control” such that he would not be expected to testify in his or her favor. In order to allow for effective judicial review, it is imperative that all discussions regarding this matter be clearly set forth on the record so that the respective positions of each party are readily discernible (cf. People v Ferguson, 67 NY2d 383, 389; see, United States v Blakemore, 489 F2d 193, 196; United States v Young, 463 F2d 934, 941).
It is to be emphasized that the "availability” of a witness is a separate consideration from that of "control”. "Availability” simply refers to the party’s ability to produce such witness. Surely, it would be unfair as well as illogical to allow a jury to draw an adverse inference from the failure of the party to call a witness when the party is unable to do so (see, 2 Wigmore, op. cit., at 199). So that, if the party opposing the charge can demonstrate, for example, that the witness’ whereabouts are unknown and that diligent efforts to locate him have been unsuccessful (People v Sharp, 107 NY 427, 465; People v Griffin, 100 AD2d 659, 660; People v Williams, 34 AD2d 1046); or that the witness is ill or incapacitated (Reehil v Fraas, 129 App Div 563, 567, supra), the charge should not be given for the inference that the witness has not been called because of his anticipated unfavorable testimony has been negated.
"Control”, however, has been described as a "relative concept” (People v Dillard, 96 AD2d 112, 115; People v Douglas, 54 AD2d 515, 516; People v Moore, 17 AD2d 57, 59, supra) and *429 although not susceptible of precise definition, does not concern physical availability but rather the relationship between the witness and the parties. When the uncalled witness can be said to be equally available to both parties — that is, when it is within the ability of both parties to produce the witness — but the witness is a stranger to both parties and thus cannot be expected to testify favorably to one party or the other, then generally no unfavorable inference may be drawn from the failure of either party to call the witness (People v Rodriguez, 38 NY2d 95, 98, supra; Hayden v New York Rys. Co., 233 NY 34, 36-37; see, Richardson, Evidence op. cit., at 66). On the other hand, if a witness, although theoretically "available” to both sides, is favorable to or under the influence of one party and hostile to the other, the witness is said to be in the "control” of the party to whom he is favorably disposed, and an unfavorable inference may be drawn from the failure to call the witness (People v Rodriguez, supra; People v Brown, 34 NY2d 658, 660; Richardson, Evidence op. cit., at 66; McCormick, Evidence op. cit., at 806). This conclusion results from the notion that the witness’ testimony is, in a "pragmatic sense * * * unavailable to the opposing party regardless of physical availability” (United States v Blakemore, 489 F2d 193, 195, n 4, supra). Thus, the fact that a witness is "equally available” to both sides, standing alone, is insufficient to defeat a timely request for the charge. Rather, it must also be demonstrated that the witness is not in the "control” of the party who would have been expected to call him — that is, the witness, by nature of his status or otherwise, would not be expected to testify favorably to one party and adversely to the other. A missing witness charge would be appropriate however, if it is demonstrated that the party had the physical ability to locate and produce the witness, and there was such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor.
Control is not limited in the case of a prosecution witness,[1] as the People contend here, to law enforcement officers or persons connected to the District Attorney’s office. Certainly, law enforcement officers (People v Wright, 41 NY2d 172; *430 People v Brown, 34 NY2d 658, supra; People v Miles, 48 AD2d 706), informants (People v Dillard, 96 AD2d 112, supra; People v Alamo, 63 AD2d 6, 7), or others connected to the prosecution are witnesses who are "or may be inferred to be, of good will” (Richardson, op. cit, at 66) to the prosecution and can be expected to testify favorably to the prosecution and adversely to the defendant. Similarly, however, the spouse or other close relative of the complainant can also be expected to so testify absent facts demonstrating a connection between said witness and the defendant such that the witness would not be expected to testify favorably to the People and adversely to the defendant (People v Wilson, 64 NY2d 634, 635; People v Rodriguez, supra; People v Moore, supra).
Here, defendant adequately met the threshold requirements to entitle him to a missing witness charge by bringing to the court’s attention the failure of the People to call a witness with knowledge about a material issue in the case and who would be expected to testify favorably to the People. The complainant’s own testimony concerning her husband’s sighting the defendant in flight immediately after the crime demonstrated that the husband was knowledgeable about a material issue: the identity of defendant as one of the assailants. Equally certain is the fact that the potential testimony of the complainant’s husband was material. The prosecution’s case rested entirely upon the complainant’s testimony and identification of the defendant. Moreover, complainant’s credibility had been impeached on cross-examination such that corroboration of her testimony was crucial (see, People v Wright, 41 NY2d 172, 176, supra). In these circumstances, it can hardly be said that the husband’s testimony would have been immaterial or irrelevant (see, People v Wright, supra; People v Brown, 34 NY2d 658, 659-660, supra; People v Rodriguez, supra). Nor can we accept the People’s argument, raised for the first time on appeal, that the testimony of the complainant’s husband would have been cumulative. Such a determination must be made by the trial court who is best suited to determine the issue in light of the facts and circumstances of each case. Suffice for our purposes to say that there is no support in the record before us to indicate that the testimony would have been cumulative.[2]
*431 Additionally, defendant established that the uncalled witness would be expected to testify favorably to the People and adversely to him such that he could be considered to be in the People’s control. The uncalled witness was the common-law spouse of the complainant and the father of complainant’s four-year-old son. They had resided together for seven years. These facts, without any rebuttal from the People at the time of the request to charge, sufficiently established that the uncalled witness, by virtue of his relationship with the complainant, would naturally be expected to testify in support of the People’s position and adversely to the defendant’s case. Nor is the People’s assertion that both parties had the physical ability to call the witness sufficient to defeat the charge because, as we have explained, when the witness is under the control of one party, such witness is in a pragmatic sense unavailable to the opposing party. Under these circumstances, it was error for the trial court to fail to instruct the jury that an unfavorable inference may be drawn from the People’s failure to call the complainant’s spouse. A fortiori, it was also error to prohibit defendant’s counsel from arguing this point to the jury in his summation (Seligson, Morris & Neuburger v Fairbanks Whitney Corp., 22 AD2d 625, 630). We would note also that the inference that the jury may draw is permissive and the People are equally able to argue in summation against the inference and can seek to explain the witness’ absence by reference to evidence in the record (see, People v Geoghegan, 68 AD2d 279, 287, affd on other grounds 51 NY2d 45; 2 Wigmore, op. cit., at 216).
Based on the foregoing, the order of the Appellate Division should be reversed, the judgment of conviction vacated and the matter remitted to Supreme Court, Kings County, for a new trial.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Titone and Hancock, Jr., concur.
Order reversed, etc.

. We have no occasion here to address the circumstances in which a witness may be said to be in a criminal defendant’s control nor whether and the circumstances under which a nontestifying defendant may be subjected to a missing witness charge, determinations which may involve constitutional considerations.

. The People’s reliance on People v Almodovar (62 NY2d 126) in this regard is misplaced. In the first instance, the prosecution there expressly objected to the charge on the ground that the potential testimony of the *431 victim’s common-law wife was cumulative to other testimony and thus the trial court was able to exercise its discretion. Moreover, the uncalled witness in that case had no knowledge of any evidence, other than that found to be cumulative, that was material to any issue in the case. Thus, we held that the failure of the People to call the victim’s common-law wife did not entitle defendant to a missing witness charge because there "was nothing to indicate that [her] testimony would have contradicted or added to that of the other witnesses” (62 NY2d, at p 133, supra). To the contrary, in the instant case, the defendant established and the testimony of the complainant supported the fact that the uncalled witness was knowledgeable about a material issue.