OPINION OF THE COURT
Sheldon Greenberg, J.
In the early morning hours of December 31, 1985, Mrs. Rita Louissaint dropped off her 6 Vi-year-old son, Anthony, at a sitter’s house and went to her job, intending to pick up the boy at the end of the workday. At about 11:00 a.m. that same morning, the boy’s father picked the child up and took him to visit the defendant who occupied a basement room in the multistory dwelling at 1648 Carroll Street in Brooklyn.
The basement area was, at the time, divided into four or five enclosed, single occupancy rooms, surrounding a larger open area used by the tenants as a community kitchen. Jean Dulció, part owner of the premises, lived on one of the two upper floors with the other similarly rented out.
Anthony Louissaint (7 Vi years old at the time of trial; born July 14, 1979) was sworn after a voir dire and testified that his father took him to the house of the defendant, whom he knew as "John”. He said his father began drinking liquor at a New Year’s Eve party, involving other adults, which was then in progress in the kitchen area. The child was put into the defendant’s room where he avidly began to play with an electronic video game attached to the TV set. As the afternoon progressed and the father became intoxicated at the party, the child continued to play in the defendant’s room, but was *365 aware that the defendant sent his father out with money to buy food on two occasions. Then, each time, while the party continued in the kitchen, the defendant entered the room occupied by the child and put his mouth on the boy’s penis. He testified that although this was done twice, each time after the father had left the premises, he did not tell the father what had happened when the man returned, either time, because his father was "too drunk.”
Mrs. Louissaint testified that when she got to the sitter’s home some time after 10:00 p.m. on December 31st, and discovered that her son was with his father, she immediately deduced that they had gone to 1648 Carroll Street, as Anthony was a frequent visitor there, enjoyed the video game, and, it was one of the father’s usual hangouts. When she got there the party was still in progress in the kitchen area and she argued loudly with the father about his inebriation, which by that time was quite advanced, and berated him for taking the child to an adult drinking party. She took the child home, where, eventually, his erratic behavior caused her to question him as to what had happened. Anthony told her what John had done to him, and about 7:00 a.m. on New Year’s Day, January 1, 1986, she went to his room to confront him with what the child had told her. The defendant would not come out of his room, and she went for the police.
In the meantime, the defendant did emerge, and Jean Dulció testified that the defendant asked him if Dulció had heard what had happened. When Dulció informed him that he had heard, the defendant said that he did things like that when he drank and believed that it was caused by the defendant’s father having sexually abused him as a youth. When Mrs. Louissaint returned with the police the defendant was arrested.
The defense presented one witness, Mr. Roosevelt Sainte, an adult who was at the party when Anthony and his father arrived and, who as he testified, remained until 2:00 a.m. the next day. He told the jury that he could see the defendant in the kitchen and the child in the defendant’s room at most times during the day, that he never saw them alone together, and that he never saw the father leave the party for more than a second or two.
The People rested without calling Anthony’s father to the stand.
Inter alia, the defendant’s attorney requested that the court *366 charge the jury on intoxication per Penal Law § 15.25 using the suggested pattern charge (see, 1 CJI [NY] 9.46, at 521) with respect to all counts of the indictments. The court agreed to so charge the jury with respect to all counts with the exception of numbers two and four, each charging sodomy in the first degree based upon the child being under the age of 11 at the time of deviate sexual intercourse with the defendant, reasoning that the intoxication charge was, therefore, inappropriate, as the statute required proof of no mens rea which could be negated by intoxication. The defendant excepted to such a charge and asked that if the court would not apply the charge to all counts, that the court not charge intoxication with respect to any count. Intoxication was not charged.
Counsel also requested that the jury be given a "missing witness” charge with respect to the boy’s father, inasmuch as the child had testified that when the defendant sodomized him, the father had each time left the area of the party, and a defense witness testified that the complainant’s father left the area only once, and then for too short a period for the crime to have taken place.
The court declined to give the missing witness charge and the defense excepted.
The defendant was convicted of four counts of sodomy in the first degree and has moved to set aside the verdict based upon the refusal of the court to charge intoxication and missing witness as requested.
THE MISSING WITNESS
Under certain circumstances, the failure of a party to produce at trial a witness who presumably has evidence that would "elucidate the transactions”, requires a trial court, upon timely request, to instruct the jury that an unfavorable inference may be drawn from the failure of that party to call such a witness (People v Gonzalez, 68 NY2d 424; People v Rodriguez, 38 NY2d 95, 98; see, Richardson, Evidence § 92, at 65-68 [Prince 10th ed]). However, mere failure to produce a witness at trial, standing alone, is insufficient to justify the charge. Rather, it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him; and that the witness is available to such party (People v Gonzalez, supra; Richardson, op. *367 cit.) Furthermore, the party seeking the "missing witness” charge has the burden, in the first instance, of notifying the court that there is an uncalled witness believed to be knowledgeable about a material issue in the case (People v Gonzalez, supra). The defendant has met this burden. Therefore, in order for the People to avoid the court so instructing the jury they must demonstrate that the charge is somehow inappropriate. While conceding that they made no diligent effort to locate the father, and that even though he appeared to be a friend of the defendant, he could be expected to testify favorably for the People, they strenuously argued that his testimony is not material or relevant to the issue of whether or not the defendant sodomized the child since his absence removed him as a witness to the act; as such, he had nothing material to contribute in the People’s case. The court agrees, and finds further that the People could not have offered him in rebuttal even after the defense witness had indicated his own watchful presence over both the defendant and the child and offered his assurance that they were never together out of his sight, that he saw no sodomy take place; and adding that the child’s father left only once, and then but for an instant.
Proper rebuttal evidence is not merely evidence which contradicts a witness on the opposite side, or corroborates that of the party seeking to introduce such rebuttal evidence. It is evidence in denial of some affirmative fact which the answering party has endeavored to prove (Richardson, Evidence § 517, at 508 [Prince 10th ed]). Thus, if the People had sought to rebut the defense case by proving that the complainant’s father had left the area twice giving enough time to the defendant to commit the crimes, the People would be seeking to prove a collateral fact of little probative value. Under the facts of this case the father could have been "present” and the crime still have taken place. Indeed, such testimony may be viewed additionally as unfairly bolstering the credibility of the complainant, and cumulative.
Furthermore, in view of the complainant’s testimony and the defendant’s confession, failure to give a missing witness charge, if it were required, is harmless error under the facts and circumstances of this case (see, People v Walker, 105 AD2d 720; see also, People v Crimmins, 36 NY2d 230).
THE INTOXICATION CHARGE
Penal Law § 15.25 provides that evidence of a defendant’s *368 intoxication, while not a defense to a criminal charge, may be considered by a jury whenever that information is relevant to negate an element of the charged offense. Thus, where the statute defining a given crime makes it necessary for the People to show that the defendant acted with a particular state of mental culpability in order to prove that crime, the defendant may argue that the alcohol he had voluntarily consumed made it impossible for the statutorily required mental state (intentionally, recklessly, knowingly, etc.) to have been formed by him, and consequently, the People have not proved that element of the offense in question (People v Segal, 54 NY2d 58, 66; People v Westergard, 113 AD2d 640, 647).
Not every definition of an offense, however, contains within it a requirement that the legislatively proscribed behavior be accompanied by a culpable mental state in order for the crime to be proven; these are termed crimes of "strict liability.” Where a "strict liability” crime is set out, while it is nevertheless still necessary that the People prove that the accused performed conduct which included a voluntary act or omission to act which he was physically capable of performing (Penal Law § 15.10), this requirement does not necessitate proof of a culpable mental state.
A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability (Penal Law § 15.15 [2]).* Penal Law article 130 contains statutes imposing criminal liability for sodomy, rape, and sexual abuse. Some of the subdivisions of those statutes prohibit sexual acts or abuse made possible by forcible compulsion; others impose criminal liability merely because the victim is under age 11. Those subdivisions that require forcible compulsion as an element of the offense can thus be interpreted as to require a specific culpable mental state, i.e., force applied with intent to compel submission (see, People v Glover, 66 NY2d 931, cert denied — US —, 106 S Ct 2283).
Penal Law § 130.10 provides that in any prosecution under Penal Law article 130 in which the victim’s lack of consent is *369 based solely upon incapacity to consent because of mental defect, mental incapacity, or physical helplessness, it is an affirmative defense that the defendant, at the time he engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent. Not only is age not mentioned in this defense of "mistake of fact”, but Penal Law § 15.20 (3) expressly provides that even if the mens rea of "knowing” is an element of an offense, the defendant’s mistake as to the child’s age is not a defense unless the statute expressly provides that it is a defense thereto.
No such defense exists to sodomy in the first degree based upon deviate sexual intercourse with one under the age of 11 (Penal Law § 130.50 [3]), and since there is no reasonable view that the Legislature intended to require proof of a mens rea for offenses imposing criminal liability for rape, sodomy, and sexual abuse where the victims are under the age of 11, those offenses impose strict liability regardless of the culpable mental state of the defendant and, therefore, the effect of intoxication (pursuant to Penal Law § 15.25) is immaterial to the jury’s determination of guilt. The court, therefore, properly refused to charge the jury upon the effects of intoxication with respect to the two counts of the indictment charging the defendant with sodomy in the first degree under Penal Law § 130.50 (3) (counts two and four).
The motion is denied in all respects.

 Even though the Penal Law does not expressly require a mens rea as an element of criminal possession of a weapon in the third degree when the weapon is a loaded firearm possessed outside of one’s home or place of business (Penal Law § 265.02 [4]), the statute has been interpreted as requiring knowing possession as an element of the crime. (People v Ford, 66 NY2d 428, 440; People v Cohen, 57 AD2d 790; 3 CJI [NY] PL 265.02 [4], at 2201-2204; see, Penal Law § 15.05.)