■ BARRY M. WYMAN, an Infant, by His Natural Guardian and Father, BARRY WYMAN, et al., Respondents, v J. GIARNELLA & SON, INC., et al. Appellants.—Judgment of the Supreme Court, Bronx County (James R. Cowhey, J.), which, after a jury trial, awarded plaintiff Marie S. Wyman the sum of $50,000 and plaintiff Barry Michael Wyman, an infant, the sum of $70,000, unanimously modified, on the law, to vacate

---

the award to Barry Michael Wyman, and the matter is remanded for a new trial only with respect to the issue of the amount of damages sustained by Barry Michael Wyman, and is otherwise affirmed, without costs.

The action was brought by a mother and her infant son for personal injuries sustained in an automobile accident, and culminated in a verdict awarding the mother $50,000 and the child $70,000. Defendants appeal, arguing that the verdict is excessive as to both of the plaintiffs, and also that prejudicial error was committed by the trial court in refusing defendants' request for a missing witness charge based on the infant's failure to testify on his own behalf. We disagree with defendants that the amounts awarded are excessive, but agree with them that, at least with respect to the issue of the infant's damages, a missing witness charge should have been given (PJI 1:75), albeit together with a so-called "tender years addendum" *(see, People v Edwards,* 161 AD2d 151 [" 'But if the child is a child of tender years, as is the case here, you the Jury are instructed to consider that child's age, as well as the circumstances surrounding the alleged event, in deciding the impact, if any, of the [child's] failure * * * to testify' "], citing *Crosby v Beaird,* 93 AD2d 852; *Treuhaft v Bender,* 193 App Div 666, *affd* 233 NY 556).

The injury claimed to have been suffered by the infant, who was four years old at the time of the accident and seven at the time of trial, is posttraumatic stress disorder. His mother testified that at the moment of the accident, there was a tremendous clap of thunder; that for a period of several months after the accident, the boy suffered sleeplessness and nightmares; and that while these symptoms are no longer present, he continues to be unusually shy and withdrawn and fearful of rain and especially of thunder and lightning ("If he sees rain, he runs in the house, and either me or my husband have to go with him. And he closes every single window in the house. It could be 100 degrees out. If its thundering and lightning, he goes in the house and makes sure to take a blanket and lay on the couch with it over his head"). Plaintiffs' expert, a clinical social worker specializing in "children with psycho-social problems related to chronic and terminal illness", testified that the boy was "obviously traumatized" by the accident, and, as a result, developed an abnormal fear of rain, thunder and lightning, at first "acute" and now "chronic", which could later in life become a "phobia" adversely "affecting his psycho-social life, meaning his socializa-

tion, his school life, and his vocational life"; that while the more acute symptoms of sleeplessness and nightmares and inability to go out in the rain had "abated", he would continue to have "this weak spot in him due to the event" making him susceptible to a "recurrence and re-activation of the symptoms" as he passed through life's various "developmental stages"; and that, accordingly, the boy should presently be given a "complete battery of psychological testing" and then "monitored throughout his childhood" with "periodic psychological testing". A child psychiatrist called by defendants challenged the diagnosis of posttraumatic stress disorder as not based on sufficient data.

The record indicates that a charge conference was held off the record at which a request by defendants for a missing witness charge based on the boy's not testifying on his own behalf was denied. The failure to put these discussions on the record leaves us uncertain as to the arguments urged for and against the request, and the reasons why it was denied (see, People v Gonzalez, 68 NY2d 424, 428 ["In order to allow for effective judicial review, it is imperative that all discussions regarding this matter be clearly set forth on the record so that the respective positions of each party are readily discernible"]). We therefore assume that the request was rejected for the two reasons now being urged by the boy's attorney on appeal: that parents, more so when their child sustains a mental than physical injury, are naturally averse to having the child "relieve the event" behind the injury; and that to have subjected this boy to the untender examination of a trained advocate would have been to place his mental health in serious jeopardy. As the child's attorney puts it in his brief: "Certainly and absolutely a jurist must by his oath of office and understanding of the doctrine of parens patriae, he must stand strong under the circumstances of a psychiatric stress disorder that can rip a child asunder. In the absence of a trained professional guiding the course of discussion in a therapeutic manner and method, a cross examination such that would have a child relive this event would wreak havoc on this child's psyche."

If these were the explanations offered by the child's attorney to the Trial Judge for not calling the child to testify on his own behalf, then, at least with respect to the child's posttraumatic stress disorder, the explanations, assuming support for them in the record, should have been referred to the jury by incorporating them into a missing witness charge

together with instructions to the effect that the child's age and the circumstances surrounding the accident were to be considered in deciding whether to draw the inferences permitted under that charge. While common sense indicates that a seven year old would not have a reliable recollection of an event that took place more than three years earlier, and that a missing witness charge was therefore properly denied insofar as invoked for the purpose of impugning plaintiffs' case on liability *(see, People v Gonzalez, supra,* at 427-428), it is hardly self-evident that the boy's testimony would not have served to elucidate his continuing and "chronic" fear of rain. That being so, it should have been left to the jury to decide whether a reasonable explanation had been given for not calling him *(Crosby v Beaird, supra; see, Roma v Blaustein,* 44 AD2d 576). Concur—Sullivan, J. P., Rosenberger, Wallach, Asch and Smith, JJ.