■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS JIMINEZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered June 21, 1988, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered. No questions of fact have been raised or considered.

We conclude that the court erred in granting the People's request for a missing witness charge, and, since the error cannot be considered harmless, reverse and grant a new trial. The defendant was charged with murder in connection with the death of Antonio Cruz. According to testimony elicited at his trial, on the night in question, the defendant accompanied an acquaintance, Eddie Rios, to a church dance to pick up Rios's sister Sylvia. A third acquaintance, Frank Tomeo, was a passenger in Rios's car. Outside the church, the defendant and his companions became involved in an argument with a group of three men, which included the victim. The two groups drove their cars to another location where the argument continued and escalated into a fistfight among several of the men. Cruz was shot and died a few days later in the hospital.

Cruz's two companions testified that the defendant grabbed a gun from Eddie Rios and fired the fatal shots at Cruz. The defendant's companion, Frank Tomeo, testified that the shots were not fired from the front of the car, where the defendant fought with Cruz, but from the rear of the car, near Rios. This testimony was consistent with a detective's testimony as to the location of the spent shells. The defendant testified that the man fighting with Rios (George Suarez) had a gun and

that both he (the defendant) and Cruz ran when the shots were fired.

At the close of the defendant's case, the People requested a missing witness charge with respect to Eddie and Sylvia Rios. The court granted the request over the defense counsel's objection. We find that this was error. In general, a court may not comment upon a defendant's failure to come forward with evidence. However, the jury may be instructed on the defendant's failure to call "an available witness who is under defendant's control and has information material to the case" *(People v Rodriguez*, 38 NY2d 95, 98; *see, People v Paylor*, 70 NY2d 146; *People v Wilson*, 64 NY2d 634; *People v De Jesus*, 42 NY2d 519). Although Eddie Rios and his sister were knowledgeable about a material issue in the case, since both of them were present when the shooting occurred, the record fails to reveal that either of them was under the defendant's control *(see, People v Williams*, 112 AD2d 177; *cf., People v Morales*, 126 AD2d 575).

Moreover, a missing witness charge is inappropriate where the missing witness could be viewed as an accomplice *(see, People v De Jesus, supra)*. According to the prosecution's witnesses, Eddie Rios possessed the gun which was used to kill Cruz, and there was testimony suggesting that the shots came from his direction. Particularly telling is the court's comment, in discussing the People's request for this charge, that "[i]t is also very obvious to the Court that George Suarez didn't kill his friend, Antonio Cruz, but that if anybody other than the defendant did the shooting, it must have been Eddie Rios". Under the circumstances, the court erred in instructing the jury that it could infer that the testimony of Eddie Rios and his sister would not have supported the defendant's testimony if they had been called as witnesses. The prejudice to the defendant from this charge was compounded by the prosecutor's comments in summation:

"I suggest to you that there are two reasons why Eddie Rios is not here.

"And the first is that, because it was Eddie Rios who had the gun in his waistband; who was the man that the Defendant went back to and got the gun from, that he used to shoot and kill Tony Cruz or, second, because Eddie Rios knows what went on that night, and if he came to court, he wouldn't give this nice little sanitized story that Frank could be asked to give or that the Defendant could give that Eddie would come in and tell what went on that night".

In view of the conflicting evidence, the error cannot be

deemed harmless *(see, People v Crimmins,* 36 NY2d 230; *People v Williams, supra).* Kooper, Lawrence and O'Brien, JJ., concur.

Kunzeman, J. P., dissents, and votes to affirm the judgment appealed from, with the following memorandum: Contrary to the position adopted by my learned colleagues of the majority, I am of the view that neither the improper missing witness charge nor the prosecutor's comments during summation constitutes reversible error.

On March 27, 1987, the defendant and an acquaintance Eddie Rios went to a church dance to pick up Rios' sister, Sylvia. While waiting for Sylvia Rios to leave the dance, Eddie Rios and the defendant heard three men across the street from the church shout obscenities at some young women who were leaving the dance. When the three men—Angel Acevedo, Antonio Cruz and George Suarez—shouted at Sylvia Rios as she exited the church, an altercation ensued between the two groups. The end result of the altercation was that Cruz was fatally shot.

When the police responded to the scene, Acevedo volunteered that he and Suarez were with Cruz at the time of the shooting. Acevedo and Suarez gave the police officer a description of the perpetrator, which he transmitted over his radio.

According to Acevedo's version of events, Cruz, at one point during the altercation, stunned the defendant with a hard punch in the face. The defendant thereupon backed up to his car and obtained a gun from one of his friends. The defendant called Cruz a bastard and then shot him from a distance of two or three feet. Cruz, who was unarmed, fell to the ground. The defendant then shot him three more times.

After the shots were fired, Acevedo and Suarez ran away and were pursued by the defendant, who was driving his car. The defendant fired a shot at Acevedo and the latter took cover in a bar, where he called the police. After a few minutes, Acevedo returned to the scene of the crime, where he saw Cruz being taken away in an ambulance.

Acevedo, who viewed the incident under good lighting conditions, recalled that the defendant's black hair was combed back into a "tail". The defendant also wore a bell-shaped "Kangol" hat and had a moustache and goatee. He recalled that he identified the defendant in a police lineup.

After the defense rested the trial court, over the defendant's objection, granted the People's request for a missing witness charge with respect to Eddie Rios and Sylvia Rios.

The law is well settled that the party seeking a missing witness charge establishes a prima facie right to it by showing that the unproduced witness is knowledgeable about a material issue and would be expected to testify favorably to the opposing party *(see, People v Gonzalez,* 68 NY2d 424, 428; *People v Sykes,* 151 AD2d 523; *People v Bessard,* 148 AD2d 49, 53). Once such a showing is made, the party opposing the charge can only avoid it by demonstrating, *inter alia,* that the witness's testimony would be immaterial or merely cumulative, or that the witness is unavailable, or is not under that party's control, such that he or she would not be expected to testify in that party's favor *(see, People v Gonzalez, supra,* at 428). Control is a relative concept which is directed to the relationship between the witness and the parties rather than to physical availability *(see, People v Vasquez,* 76 NY2d 722, 724; *People v Gonzalez, supra,* at 429).

Eddie Rios and Sylvia Rios were clearly knowledgeable about a material issue in the case inasmuch as both were present when the shooting occurred. However, the record fails to reveal any predilection to testify favorably for the defendant on the part of Eddie Rios, who was merely an acquaintance of the defendant, or on the part of Sylvia Rios, whose relationship to the defendant, if any, was not established at the trial *(see, People v Sykes, supra,* at 523; *People v Mendez,* 138 AD2d 637, 638). It is my opinion, however, that the court's error was harmless in light of the overwhelming evidence of the defendant's guilt *(see, People v Crimmins,* 36 NY2d 230, 241-242; *People v Wearing,* 126 AD2d 586, 587; *People v Morales,* 126 AD2d 575, 576).

In asserting that the evidence of guilt was not overwhelming, the defense relied upon the testimony of Detective Rodriguez to the effect that the shells which caused the decedent's death could have come from the gun of a shooter who was standing approximately 18 feet from the defendant's car. On this basis, the defense urged that either Suarez or Rios, who were behind Rios' car, must have fired the fatal shots. This argument, however, overlooks Detective Rodriguez's testimony that the shells could have been moved when kicked or struck by the wheels of a car. The detective conceded that he did not know the precise location where the shells were recovered, and that the report prepared by the crime scene unit showed that the shells were recovered in a location other than that indicated in the diagram which he had prepared on the night of the shooting. Thus, Detective Rodriguez's testimony does not detract from the strength of the People's case.

With respect to the comments objected to in the prosecutor's summation, the trial court issued a curative instruction informing the jurors that they could not speculate as to how Eddie or Sylvia Rios might have testified. Thus, any potential prejudice to the defendant emanating from the prosecutor's summation was eliminated (see, People v Gibbs, 59 NY2d 930; People v Munoz, 157 AD2d 863). Since the defense counsel neither requested further curative instructions nor moved for a mistrial on this ground, any claim regarding the prosecutor's invitation for the jury to speculate as to what the testimony of Eddie or Sylvia Rios would have been is unpreserved for appellate review (see, People v Medina, 53 NY2d 951; People v Johnson, 154 AD2d 618, 619). In view of what I perceive to be the overwhelming evidence of the defendant's guilt, our interest of justice jurisdiction should not be exercised in this case.