[608 NYS2d 434]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
NATHANIEL MAGETT, Appellant.

First Department, March 3, 1994

### APPEARANCES OF COUNSEL

*Joseph Nursey* of counsel, New York City *(Elizabeth A.
Reingold* with him on the brief; *E. Joshua Rosenkranz,* attor-
ney), for appellant.

*Lisa M. Brauner* of counsel, New York City *(Deborah L. Morse* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

**OPINION OF THE COURT**

KUPFERMAN, J.

At approximately 4:00 P.M. on June 6, 1990, defendant and two women, later identified as Wanda Gillian and Adrian Bullock sold an undercover officer two vials of crack during a "buy and bust" operation. The women were arrested at the scene and defendant was arrested two hours later in front of the same building by a member of the backup team.

At his nonjury trial, defendant presented an alibi defense through his stepmother who testified that she observed the arrest of the two women, one of whom, Ms. Bullock, was her daughter, and that, at the time, defendant was not present inasmuch as 15 minutes earlier he had taken a broken stereo component to a repair shop for her.

The issue presented is whether the trial court's decision to draw a negative inference against defendant for his failure to call his stepsister as a witness deprived him of a fair trial. We find that it did.

It is well established that the trier of fact may draw a negative inference or "missing witness" inference when the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him or her; and, the witness is available to such party *(People v Gonzalez,* 68 NY2d 424, 427; *People v Paylor,* 70 NY2d 146, 149). Furthermore, "the issue must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid 'substantial possibilities of surprise' " *(People v Gonzalez, supra,* at 428 [citation omitted]).

Here, the court never advised defense counsel during trial that it was going to draw a negative inference due to defendant's failure to call his stepsister as a witness, although it touched upon the issue tangentially during cross-examination when, after defendant was asked if he recognized his stepsister in a photograph, it asked defendant: "Where is your sister right now?", to which defendant replied that she was in "a shelter in the Bronx". However, the significance of such query

appears minimal inasmuch as the court also asked defendant if he knew where Wanda Gillian was, to which he responded that she was in a drug rehabilitation program. The court later addressed the issue after defense counsel completed his summation when it asked: "[Why] should the court not draw any inference by the fact, by reason of the fact that you failed to call the sister to the stand?" Defense counsel responded that "his sister is incarcerated, is not available," whereupon, the court and the prosecutor both stated that she was not incarcerated, but was "in a program" at which point discussion of the issue ended and the prosecutor summed up to the court.

In light of the conflict among the various statements that Ms. Bullock was "in a shelter in the Bronx," was "incarcerated," or was "in a program," it cannot be determined on the present record whether or not Ms. Bullock was available to testify at trial. In this respect, we also note that, for purposes of appellate review, it is imperative that all discussions on the matter be clearly set forth on the record so that the parties' respective positions are discernible *(People v Gonzalez, supra,* at 428). In any event, as previously indicated, after receiving this information, the court discontinued the discussion without reaching any conclusion on the issue and neither directly nor indirectly informed defense counsel that it would draw a negative inference due to his failure to call the witness. Even had the court so informed counsel, such notice would have been untimely inasmuch as both sides had already rested *(People v Rosario,* 191 AD2d 243, 244). In fact, it was only after it rendered its decision from the Bench the next day that the court first notified the parties that, it had drawn an unfavorable inference against defendant in light of defendant's failure to give any satisfactory explanation as to why he didn't call his stepsister as a witness on his behalf. Thus, defendant was deprived of any opportunity to establish the witness's unavailability or to explain his failure to call her.

Moreover, although Ms. Bullock's participation in the alleged crime would make her knowledgeable about a material pending issue in the case, i.e., defendant's presence at the scene, it does not appear that the inference drawn by the court was proper inasmuch as the evidence does not indicate that she was under defendant's control such that she would be expected to testify in his favor. First, she implicated defendant when she earlier pleaded guilty. Second, while a familial relationship may, under certain circumstances, be sufficient to establish the necessary element of control, there must be

evidence that such a relationship existed *(see, People v Gonzalez, supra,* at 431). Here, Ms. Bullock's mere status as defendant's stepsister (both defendant and his mother testified that she did not live with either of them) is insufficient by itself to give rise to a presumption that she was under his control *(see, People v Josan,* 92 AD2d 902, 903; *see generally* [on definition of "immediate family"], *Trombetta v Conkling,* 82 NY2d 549; Stein, New York Court of Appeals Roundup, *Link to the Victim,* NYLJ, Jan. 13, 1994, at 3, col 1). In any event, defendant never got the chance to establish otherwise. Under the circumstances a new trial is warranted.

Accordingly, the judgment of the Supreme Court, New York County (Alfred H. Kleiman, J.), rendered January 31, 1992, which convicted defendant, after a nonjury trial, of criminal sale of a controlled substance in the third degree and sentenced him to an indeterminate term of from one to three years' imprisonment, should be reversed, on the law, the judgment of conviction vacated and the matter remanded for a new trial.

ROSENBERGER, J. P., ELLERIN and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 31, 1992, reversed, on the law, the judgment of conviction vacated and the matter remanded for a new trial.