Titone, J.
(dissenting). The simple premise underlying an adverse inference charge for a missing witness is that a person in a party’s control, and capable of offering favorable, material testimony, would "naturally” be expected to testify for that party given the party’s litigation theory (People v Gonzalez, 68 NY2d 424, 427). Thus, the party’s failure to call that presumably "friendly” witness permits the logical inference that the witness was not summoned because the anticipated testimony would have been unfavorable. Where, under the party’s theory, that person could give material testimony only by incriminating himself or herself, it is no longer a valid assumption that he or she would testify in the party’s favor and simultaneously risk his or her own prosecution. Accordingly, I cannot join the majority’s conclusion that a missing *181 witness charge was warranted here because defendant failed to verify that his father would have invoked the privilege against self-incrimination — a point which was never disputed by the People. Rather, I would hold that because defendant’s father would undeniably have had to place himself in criminal jeopardy to materially support his son’s defense, the People failed to meet their initial burden of proving that the missing witness would "naturally” be expected to testify favorably to defendant, and an adverse inference charge was improper on the record before us.
As the majority recognizes, the People bore the burden in the first instance, as the proponents of the missing witness charge, to establish both that defendant’s father was "knowledgeable about a material issue” in the case and "would naturally be expected to provide * * * testimony favorable to the party who has not called him” (Gonzalez, 68 NY2d, at 427; see, majority opn, at 177). The latter element of that test, referred to as "control,” will be satisfied when the prosecution establishes that the absent witness’ testimony would not be hostile to the defense theory of the case. Only after that burden was satisfied was defendant required to come forward with evidence within his exclusive knowledge to otherwise "account for the witness’ absence” (Gonzalez, supra, at 428) and defeat the prosecution’s claim that his father would have been a witness with " 'good will’ ” towards the defense (id., at 430, quoting Richardson, Evidence § 92, at 66 [Prince 10th ed]). In this case, the burden never shifted to defendant, and it is on this point that I depart from the majority’s holding.
The majority erroneously concludes that the People met their burden of proving that defendant’s father was under defendant’s "control” merely by demonstrating that a familial relationship existed between defendant and the missing witness, and that the burden then shifted to defendant to verify that his father would have invoked the privilege against self-incrimination (see, majority opn, at 177). This overly simplistic view ignores the reality that other circumstances — such as the obvious risk of criminal prosecution — may operate to negate the inference derived from the natural tendency of a family member to testify with a bias in favor of a relative and will preclude the party seeking the charge from satisfying its initial burden. Indeed, while a familial relationship may generally be indicative of good will between a party and a witness, it is by no means dispositive of the determination that the witness is within that party’s control, and the major *182 ity misreads this Court’s precedent in concluding that the prosecution met its burden here simply by relying on that fact (see, People v Gonzalez, 68 NY2d 424, supra; People v Rodriguez, 38 NY2d 95; People v De Jesus, 42 NY2d 519, 525).
The majority properly acknowledges that no further verification of a missing witness’ existence or plans to invoke the privilege against self-incrimination is needed where "the undisputable inference * * * would clearly be that the material testimony of that witness would likely be incriminating and that the witness would refuse to testify” (majority opn, at 178). In other words, where "the most likely result of calling * * * a witness would have been his refusal to testify on self-incrimination grounds”, the inference that the witness would have given testimony favorable to the party who otherwise would have naturally called him or her is negated and the proponent’s burden is not satisfied (People v Bessard, 148 AD2d 49, 54 [3d Dept 1989, Levine, J.]). Indeed, "the jury is not entitled to draw any inference from a failure to testify that is ascribable to the witness’s reliance on his Fifth Amendment privilege” (Bowles v United States, 439 F2d 536, 542 [DC Cir 1970]; see also, Pennewell v United States, 353 F2d 870, 871 [DC Cir 1965]). There is no sound reason for the majority’s failure to apply that analysis to preclude adverse comment on the absence of defendant’s father here.
Part of the internal logic of defense theory — i.e., that defendant’s father was the true possessor of the gun — is inherently inconsistent with any expectation that the absent father would substantiate that defense. Thus, it would not be natural or logical for the defense to call this witness, whose interests are potentially adverse to the defense theory, and no adverse comment is justified on this record (see, United States v Pitts, 918 F2d 197, 200 [DC Cir 1990]). Additionally, the majority’s fears that a defendant could mount a perjurious defense by shifting the blame to a fictitious third party are not implicated here (see, majority opn, at 178). Significantly, the People do not dispute that defendant’s father exists, or that he owned the house where the gun was found. Indeed, the People never disputed that defendant’s father was likely to invoke the 5th Amendment privilege, that defense counsel had knowledge of that fact or that he had met with the missing witness. Rather, the People’s sole contention in support of their request for an adverse inference charge — and the sole basis for the trial court’s grant of that request — was that defendant’s father could testify to other nonincriminatory facts, such as his *183 depression and suicidal thoughts, which would not subject him to criminal prosecution. Tellingly, the framing of the prosecution’s request itself is internally inconsistent with the notion that any doubt existed as to the witness’ existence or intent to invoke the privilege. Defense counsel was never required to substantiate the accepted assertion that defendant’s father would have invoked his privilege, and should not now be penalized for failing to do so.
In any event, testimony by the father as to those collateral facts, although relevant, would not have supported the defense in any material respect. To do so, defendant’s father would have had to testify as to the sole material issue in the case— who possessed the gun. Indeed, even a statement by defendant’s father that he owned or was present in the house when the shots were fired and where the gun was found could have potentially subjected him to criminal liability on a constructive possession theory. Clearly, where, as here, an alternative explanation exists for a witness’ absence which is at least as likely as the prospect that the witness was not called because the testimony would be damaging, the adverse inference loses its probative force and should not be given.
Finally, it cannot be said on this record that the error in adversely commenting on defendant’s father’s absence was harmless where the heart of the defense was that the missing witness was the actual culprit and that defendant had temporarily taken possession of the gun to secure that witness’ safety. Indeed, defendant’s success depended solely on the jury’s assessment of his credibility and its acceptance of defendant’s claim that his father was the true possessor of the gun, and the missing witness charge may well have influenced the jury on this critical determination (see, United States v Pitts, 918 F2d 197, 201, supra). Accordingly, I vote to reverse.
Chief Judge Kaye and Judges Bellacosa, Smith and Ciparick concur with Judge Levine; Judge Titone dissents and votes to reverse in a separate opinion in which Judge Simons concurs.
Order affirmed.