OPINION OF THE COURT
Donald J. Mark, J.
This was an application by the defendant who was charged with two counts of murder, second degree, intentional murder and depraved indifference murder, pursuant to People v Gonzalez (68 NY2d 424) and its progeny, for a "missing witness” charge, because of the prosecutor’s failure to produce at trial as his witness an accomplice of the defendant.
The People’s version of the incident resulting in these charges was that Antonio McKnight and the victim were continuously feuding over the same female, Karen McKinney; that several weeks before July 1, 1993, McKnight, the defendant, Tommy Lee Banks, and another male assaulted the victim; that between that time and July 1, 1993, the victim fired a rifle at McKnight, the defendant, Banks and Anthony Coles without striking anyone; that on July 1, 1993, the same four males accidentally came upon the victim in his vehicle in front of Karen McKinney’s apartment; that at the urging of McKnight, the defendant used Coles’ handgun to fire four shots at the victim causing his death;[1] and that the four drove the victim’s vehicle to a park where they abandoned the vehicle and left the body of the victim.
The defendant’s version of the events leading up to the homicide was basically the same. However, the defendant claimed that McKnight fired the shots that killed the victim; that the four individuals who were present at the homicide belonged to a gang; that McKnight was the acknowledged leader of that gang and all obeyed his orders because they were fearful of his temper; that McKnight and the other two involved decided that the defendant would admit to the killing because he was 16 years of age and would be treated leniently; that McKnight informed the police that the defendant was responsible for the victim’s death and induced the defendant to surrender to the police; and that the defendant led the *525 police to the location of various items of evidence and confessed to the killing pursuant to this plan.
In the aftermath of the police investigation, the defendant was charged with two counts of murder as indicated; McKnight was permitted to plead guilty to hindering prosecution, first degree, and promised probation on condition he testify against the defendant; Banks was promised immunity from prosecution in exchange for testifying against the defendant; and Coles denied being present with the defendant, McKnight and Banks at the time of the homicide, so he was never called as a witness.
Prior to the jury selection, the defendant advised the court that he would seek a "missing witness” charge if McKnight were not called as a witness. This notice to the People at this early stage of the trial was timely (People v Gonzalez, supra, at 428). The defendant also wanted to disclose in his opening statement McKnight’s plea, sentence and cooperation agreement. Since the prosecutor properly declined to indicate if McKnight would testify (People v Rios, 184 AD2d 244, lv denied 80 NY2d 908), the defendant was not permitted to open in this regard. The court reasoned that if a "missing witness” charge were ultimately appropriate, this unchallenged assertion would satisfy the "availability” prong necessary for such instruction (People v Macana, 84 NY2d 173).[2]
At the trial, Banks testified in detail in accordance with the People’s version of the events of July 1, 1993. The defendant testified also in detail to comport with his version of the same incident. Clara McKinney, Karen McKinney’s sister, provided testimony that on the day of the murder McKnight bragged to her that he had "iced” the victim and that the defendant was going to assume the responsibility for the killing, that on subsequent occasions McKnight claimed he had "offed” the victim and that on July 2, 1993, McKnight persuaded her and Karen McKinney to watch the defendant surrender to the police. McKnight was not called to testify for the prosecution, and the defendant was precluded from calling McKnight’s attorney to give testimony concerning the agreement between the prosecutor and McKnight.
Prior to summations, the defendant requested a "missing witness” charge, arguing that because of the prosecutorial leniency extended to the defendant, the court should instruct *526 the jury that the adverse inference was mandatory and not permissive.[3] The prosecutor resisted upon the grounds that McKnight had given a written statement to the defendant in which he claimed that the defendant had fired the handgun at the victim in self-defense, and that McKnight could be impeached with this prior inconsistent statement in addition to his extensive criminal record. All of this information concerning McKnight was not made known to the jury.
The Court of Appeals in the case of People v Gonzalez (supra) delineated the five factors, all of which must be present, which would authorize a court to deliver a "missing witness” charge as (1) the witness is knowledgeable about an issue; (2) the issue is material and relevant; (3) the testimony would not be cumulative to other evidence; (4) the witness is available; and (5) the witness is under a party’s control such that he would be expected to testify in that party’s favor.[4]
Cases illustrative of the factors justifying a court’s refusal to submit a "missing witness” charge are: (1) Knowledge — People v Lyons (81 NY2d 753) — arresting officer not present at undercover drug buy and had no knowledge of transaction; (2) Materiality — People v Castro (200 AD2d 359, lv denied 82 NY2d 923) — female police officer searched female who purchased drugs from the defendant; (3) Cumulativeness — People v Williams (186 AD2d 469, lv denied 81 NY2d 849) — codefendant involved in same drug sale as defendant; (4) Availability —People v Aguirre (201 AD2d 485, lv denied 83 NY2d 868)— confidential informant disappeared and diligent efforts by the police to locate him were unsuccessful; and (5) Control — People v Hilts (191 AD2d 779, lv denied 81 NY2d 1074) — codefendant pleaded guilty to reduced charge.
Cases illustrating the factors in which a "missing witness” charge should have been given are: (1) Knowledge — People v Paulin (70 NY2d 685) — rape victim’s husband observed physical condition when she returned home after rape; (2) Materiality — People v Creeden (210 AD2d 422) — owner of house defendant burglarized knew if the defendant had permission to enter the apartment; (3) Cumulativeness — People v Gonzalez (supra) — common-law husband of robbery victim watched de *527 fendant run from the scene of the robbery; (4) Availability— People v Robertson (205 AD2d 243) — cousin of complainant witnessed robbery, his address was known to the complainant and he indicated to the complainant he was willing to testify; and (5) Control — People v Roberts (187 AD2d 615, lv denied 81 NY2d 846) — two police officers witnessed arresting officer seize bag containing illegal handgun, but defendant’s witnesses denied that the defendant possessed the bag.
The only logical rule that can be extrapolated from the case law in this area is that there are three distinct categories, the first two warranting a refusal to deliver a "missing witness” charge, and the third mandating the issuance of such a charge.
The first category involves a situation where the court can decide that a "missing witness” charge is inappropriate, based not upon evidence adduced during the trial, but upon the uncontroverted information furnished by the parties. An example is People v Congilaro (159 AD2d 964, lv denied 76 NY2d 786), where the defendant’s girlfriend testified favorably for the prosecution before the Grand Jury, but later recanted and gave the defendant’s attorney a written statement exculpating the defendant; the Court found that the girlfriend was not under the prosecutor’s control as she would not be expected to testify in his favor at trial.
This category was somewhat applicable here, and it was so argued by the prosecutor, because the court possessed information from the parties, information of which the jury was not aware, concerning McKnight’s written inconsistent statement to the defendant’s counsel (see, People v Congilaro, supra) and McKnight’s lengthy criminal record (see, People v Jackson, 190 AD2d 542, lv denied 81 NY2d 1015), both of which would subject McKnight to impeachment detrimental to the People’s case.
The second category involves a situation where the court can decide that a "missing witness” charge is inappropriate based upon the evidence adduced during the trial. An example is People v Macana (supra), where three police officers testified regarding the defendant’s movements toward the handgun’s location, and two officers testified as to the handgun’s retrieval by the fourth officer; the Court held that the testimony of the fourth officer who actually retrieved the handgun would have been cumulative.
This category was inapplicable, because the trial evidence *528 did not make it completely obvious that as a matter of law one or more of the five necessary factors was missing (see, People v Mosley, 170 AD2d 990, lv denied 77 NY2d 964).
The third category involves a situation where the court can decide that a "missing witness” charge is appropriate based upon the evidence adduced during the trial. An example is People v Kitching (78 NY2d 532), where an undercover officer purchased drugs from the defendant, and the purchase was allegedly witnessed by the undercover officer’s partner; the Court held that the claim of the prosecutor that the partner was not in a position to observe the actual sale and the argument of the defendant that the partner was in such a position, resulted in a factual dispute justifying a "missing witness” charge, leaving it to the jury whether to draw an adverse inference from the failure of the partner to be called as a witness by the People.
Thus, this third category comes into play when different interpretations can be assigned to the same factual predicate demonstrated by the evidence at trial, so that each party can argue its interpretation to the jury, and the jury will then make the ultimate determination whether an adverse inference is proper.
This third category is the category that conforms to the factual situation in this case, and this category eclipsed the first category, because where two categories are present, the category that dictates a resolution by the jury, rather than by the court, should prevail (see, People v Graham, 55 NY2d 144; CPL 710.70 [3]).[5]
Here, there was no dispute that McKnight (1) possessed knowledge, because he witnessed the homicide; that (2) the issue was material, because the identity of the perpetrator of the homicide was contested; and that (4) McKnight was available, because prosecutorial leniency was conditioned on his testimony. Therefore, these three elements of the "missing witness” charge were not submitted to the jury.
The court found that in this case (3) — cumulativeness—was subject to two interpretations, the prosecutor’s version that the testimony of McKnight would be cumulative to the testimony of Banks, since both individuals were present at the homicide and would be expected to testify in an identical manner (People v Macana, supra), and the defendant’s version *529 that the testimony of McKnight would not be cumulative, because McKnight should have to explain his feud with the victim, his admission to Clara McKinney that he had killed the victim and persuaded defendant to take the blame and his conduct in informing on the defendant and showing Clara McKinney and Karen McKinney the defendant’s surrender (see, People v Williams, 186 AD2d 469, lv denied 81 NY2d 849).
In addition, this court found that (5) Control was likewise subject to two interpretations, the prosecutor’s version that McKnight was not within his control in that he could not be expected to testify favorably, because of his feud with the victim and because of his said admission to Clara McKinney and his conduct militating in favor of the defendant's theory[6] (see, People v Rios, 184 AD2d 244, supra), and the defendant’s version that McKnight could be expected to testify favorably for the prosecution, because he alerted the police to the defendant’s role in the killing and he induced the defendant to surrender (see, People v Roberts, supra).[7]
Accordingly, the jury was instructed that it was permitted to draw an adverse inference from the failure of the People to call McKnight as a witness, if it concluded both that the testimony of McKnight would not be cumulative and that he was under the control of the People, but that such adverse inference should not be drawn if it found that such testimony would be cumulative or if McKnight was not under the People’s control.

. This conduct on the part of Antonio McKnight made him an accomplice (People v Arend, 190 AD2d 1058; CPL 60.22 [2] [b]).

. The five factors including "availability” that must coalesce relative to a "missing witness” charge will be discussed infra.

. The Court of Appeals in People v Paylor (70 NY2d 146) decreed that the proper standard is enunciated in 1 CJI(NY) 8.55, which provides that the jury may infer that the missing witness would not have corroborated the defendant’s evidence on a particular issue.

. These factors are equally applicable to a request for such instruction by the prosecution (People v Macana, 84 NY2d 173, supra).

. This is an analogy to the "second bite of the apple” concept which relates to confessions.

. The explanations of the prosecutor as to "cumulativeness” and "control” might have been argued in the alternative, depending on the credibility of Clara McKinney as assessed by the jury.

. This testimony of the police officer was an apparent exception to the hearsay rule, because it was not admitted for the truth but to corroborate the defendant’s theory of a conspiracy (People v Diaz, 189 AD2d 574).