■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMEL MARSALIS, Appellant. [803 NYS2d 152]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered January 6, 2003, convicting him of assault in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The complainant, Donald Young, alleges that on November 2, 2001 at 9:30 P.M., he and his brother, Milton Young, were standing on Regent Place near 21st Street, in Brooklyn, hailing a cab when Donald was suddenly punched in the face by the defendant. He recognized his assailant as the defendant, Jamel Marsalis, because they lived in the same building for 10 to 15 years. Donald knew him only by his nickname, "Popeye."

Milton allegedly told the defendant that the defendant's trouble with Milton's other brother, Shelton, should be kept between the two of them. The defendant then allegedly swung at, but just grazed, Milton, at which point Donald and Milton ran away. Donald was soon caught by Tracey McCoy, an associate of the defendant, and dragged to the ground. After McCoy and the defendant kicked and punched Donald several times, the defendant allegedly cut Donald with a razor on the finger, on his forehead and in one continuous cut from the back of his head around to his eyebrow, before leaving the scene.

Immediately after the attack, three calls were made to the 911 emergency telephone number: one from an anonymous caller, one from Milton, and one from Donald. All three 911 tapes were admitted into evidence and played for the jury. The anonymous caller said that someone had been stabbed and that four men were attacking one man. In his call, Milton said that his brother was being attacked by a bunch of guys. He described one assailant as a tall black male wearing a black leather jacket. Donald referred to the assailant as "Pops." The People did not call Milton as a witness. The court denied the defendant's

request for a missing witness charge. The defendant contends that the court erred in denying his request for a missing witness charge. We agree.

To establish prima facie entitlement to a missing witness charge, the party seeking the charge must show that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case and that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him (*see People v Kitching*, 78 NY2d 532, 536-537 [1991]; *People v Gonzalez*, 68 NY2d 424, 427 [1986]). The defendant met his burden.

Milton allegedly was present during the initial altercation, and could reasonably be expected to corroborate Donald's identification of the defendant (*see People v Gonzalez*, 68 NY2d 424 [1986], *supra*). In addition, given Milton's comment to the defendant about trouble the defendant was having with his brother, Milton might have been able to testify regarding the defendant's motive (*see People v Jefferson*, 281 AD2d 433 [2001]).

The party opposing the missing witness charge may defeat the proponent's prima facie case by demonstrating, inter alia, that the witness is not available, or that the witness is not under the party's control such that he would not be expected to testify in his or her favor (*see People v Kitching, supra* at 537; *People v Gonzalez, supra* at 428). The People failed to demonstrate that Milton was unavailable. A party may establish that a witness is unavailable by demonstrating "that the witness' whereabouts are unknown and that diligent efforts to locate him [or her] have been unsuccessful" (*People v Gonzalez, id.* at 428). The only effort that the People made to locate Milton was to ask Donald if he knew Milton's address and/or telephone number. Significantly, Donald testified that, although he did not know where Milton lived, he saw Milton occasionally, including one time during the week before the trial, and that Milton had recently been released from jail. There is no evidence that the People independently attempted to find Milton or enlist Donald's help in making contact with him (*see People v Vasquez*, 76 NY2d 722 [1990]; *People v Robertson*, 205 AD2d 243 [1994]; *People v Gladden*, 180 AD2d 747 [1992]; *cf. People v Bryant*, 11 AD3d 630 [2004]). In addition, the People failed to establish that Milton was not under their control. "[A] witness is said to be in the 'control' of the party to whom he is favorably disposed" (*People v Gonzalez, supra* at 429). Given the fact that Milton is the complainant's brother and allegedly was assaulted by the defendant, it is clear that Milton is favorably disposed to the

People (see People v Vasquez, supra; People v Creeden, 210 AD2d 422, 423 [1994]; People v Robertson, supra). Therefore, the People failed to defeat the defendant's prima facie showing and the court erred in refusing to give the jury the requested missing witness charge.

Contrary to the People's contention, we cannot find that the court's error was harmless, to wit, that there was no significant probability that a jury, properly instructed, would have acquitted the defendant (see People v Crimmins, 36 NY2d 230 [1975]). The evidence of the defendant's guilt consisted solely of the complainant's identification, and the reliability of that identification was called into question. For example, Donald's testimony was contradicted by McCoy's testimony that the defendant did not attack Donald and that the defendant did not live in Donald's apartment building. In light of the foregoing, we cannot say that the court's failure to give the warranted missing witness charge was harmless (see People v Erts, 138 AD2d 506 [1988], affd 73 NY2d 872 [1988]; People v Gonzalez, supra; People v Badine, 301 AD2d 178 [2002]; People v Roberts, 187 AD2d 615 [1992]). Adams, J.P., Luciano, Mastro and Skelos, JJ., concur.