Tyrone **CAMPBELL** (96–A–7016), Petitioner,

v.

Brian **FISCHER**, Superintendent of Sing Sing Correctional Facility, Respondent.

Nos. 00–CV–6491 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

July 23, 2003.

Tyrone Campbell, Ossining, NY, pro se.

Johnnette Traill, Kew Gardens, NY, for Respondent.

### MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

Petitioner was charged and tried on numerous counts relating to a robbery at a jewelry store in Queens on October 5, 1995, at approximately 12:25 p.m. Witnesses to the robbery told detectives that three African–American males, armed and wearing ski masks, entered the store with guns drawn and robbed the store of about $28,000 in cash and $5000 in jewelry. When entering the store, one of the perpetrators put a gun to the stomach of Jay Diaz, a patron, and forced him into the store. After the robbery the perpetrators fled the store, got into a red or maroon Mazda 626 automobile and drove off. As they were running from the store, one of them had exchanged gunfire with the store owner. The store owner was not hurt, but his shot shattered the rear window of the getaway car.

At approximately 2:00 p.m. that same day, a car fitting the description of the getaway car—a maroon Mazda 626 with the rear window shot out—was found

abandoned in Queens. Inside the car detectives found items apparently connected to the robbery, including latex gloves and ski caps. The car was traced to petitioner.

At 2:30 p.m., petitioner's girlfriend, Esther Jimenez, reported to the police that petitioner's car had been carjacked from her at approximately 11:30 a.m. At the request of the police, petitioner and Jimenez agreed to come to the precinct. They were brought by police in separate squad cars. Upon arriving at the police station, petitioner and Jimenez were put in separate rooms. According to Jimenez, she was then accused of lying about the carjacking. Jimenez was arrested and charged with falsely reporting the carjacking incident. Petitioner was informed that Jimenez had been arrested, and then agreed to be photographed. At about 9:30 p.m., petitioner's photo was put in an array and shown to witness Diaz, who identified petitioner as the person who had put a gun to his stomach. At approximately 11:50 p.m., Diaz identified petitioner in a line-up.

At the trial, Diaz testified that the man who put a gun to his stomach—and whom he identified as petitioner—had a beard and braided hair, held a ski mask in his hand, and was wearing a hood. A detective testified, however, that Diaz and other witnesses told him at the crime scene that the man who held a gun to Diaz was wearing a black ski mask. The detective further testified that Diaz had not described the perpetrator's hair, beard or facial characteristics at the initial crime scene interview.

The prosecution also presented evidence that petitioner's car had been used for the robbery. The prosecution did not call another eye witness, Lenny Gonzalez, to testify. Petitioner sought a missing witness charge from the court, noting that Gonzalez was standing next to Diaz at the time during which Diaz testified that he had a view of the perpetrator, and that Gonzalez told detectives at the scene that he felt he could identify the perpetrator. When shown petitioner in a line-up, Gonzalez did not identify petitioner as the perpetrator. The trial court refused to give a missing witness charge.

Petitioner did not testify in his own defense. The defense case consisted solely of the testimony of Jimenez, who described being carjacked and then aided by petitioner following the incident.

Petitioner was convicted of all counts submitted to the jury: robbery in the first degree, criminal possession of a weapon in the second degree, and reckless endangerment in the first degree. He was sentenced as a second felony offender to 12 years in prison.

Petitioner's conviction and sentence were affirmed by the Appellate Division on direct appeal. Leave to appeal to the New York Court of Appeals was denied. No state collateral proceedings were initiated.

In the instant application for a writ of habeas corpus, petitioner claims (1) that his due process rights were violated by the prosecutor's misconduct when the prosecutor made multiple improper and prejudicial remarks, including vouching for the credibility of witnesses, mischaracterizing and distorting witness testimony, shifting the burden of the alibi witness onto petitioner, and indicating that the alibi witness lied; (2) that he was denied his right to counsel at the line-up; (3) that he was denied due process when the trial court refused a missing witness charge and refused to allow the defense to allude to the prosecution's failure to call a promised witness; and (4) that he was denied a fair and impartial hearing to determine whether identification evidence was gained as a direct product of illegal police procedures.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000)

(state's failure to raise exhaustion requirement does not waive the issue).

IV.  Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.,* 235 F.3d 804, 810 (2d Cir.2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996).

V.  Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See*

*Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

VI.  Analysis of Claims

Unless otherwise noted, petitioners claims are reviewed under a *de novo* standard.

Petitioner claims that his due process rights were violated by the prosecutor's misconduct when the prosecutor made multiple improper and prejudicial remarks, including vouching for the credibility of witnesses, mischaracterizing and distorting witness testimony, shifting the burden of the alibi witness onto petitioner, and indicating that the alibi witness lied.

■ Respondent suggests that this claim was deemed procedurally defaulted by the Appellate Division and that further review in this federal court is therefore precluded. With respect to procedural bar, however, the Appellate Division stated only that "The majority of the defendant's challenges to the prosecutor's remarks on summation are unpreserved for appellate review." *People v. Campbell,* 271 A.D.2d 693, 707 N.Y.S.2d 187, 187 (2000). From that statement alone, this court cannot be certain which of the challenges were deemed defaulted and which were not, nor can this court determine which of the arguably defaulted challenges were deemed barred on adequate state grounds. Review of the claim in this court will therefore proceed. The Appellate Division did make a merits holding in the alternative,

stating, "In any event, the remarks made by the prosecutor do not require reversal. They were proper responses to arguments made by defense counsel during summation and were fair comment on the evidence." *Id.,* 707 N.Y.S.2d at 187–88.

■ Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *Donnelly v. De-Christoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Nonetheless, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney v. Wallman,* 917 F.2d 469, 472 (10th Cir. 1990) (citing *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868). Inquiry into the fundamental fairness of a trial requires an examination of the effect of any misconduct within the context of the entire proceeding. *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868. In order to view any prosecutorial misconduct in context, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.... Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Fero v. Kerby,* 39 F.3d 1462, 1474 (10th Cir.1994) (quotations omitted).

■ Petitioner complains that the prosecutor improperly vouched for the credibility of witness Diaz by informing the jury that to not accept his version of the events would require it to conclude that he had committed perjury. That is a fair characterization of some of the prosecutor's comments. Nonetheless, the suggestion was made in direct response to defense counsel's argument on summation that Diaz was lying. *See* Trial Tr. at 555–57, 569–70. The comments were not improper.

■ Petitioner complains that the prosecutor mischaracterized evidence in several different ways by stating (1) that petitioner put a gun to Diaz's back and then to his stomach after Diaz turned around—thus "gloss[ing] over a major inconsistency between Diaz's in-court testimony and what he told police officers," Br. for Defendant–Appellant at 52; (2) that Diaz saw petitioner's face without a mask on; (3) that Diaz had a good view of petitioner and gave police a description that matched petitioner; and (4) that Diaz identified petitioner in the line-up and stated "that's the guy that robbed me." These comments are all fair comment on the evidence in the record. The last comment was not, in context, intended to be a direct quotation from the witness; it is, however, inferable from Diaz having chosen petitioner from the line up. None of the prosecutor's comments were improper.

■ Petitioner also complains that the prosecutor implied that petitioner's alibi witness was lying and that petitioner had the burden of establishing the truth of the alibi. The prosecutor did describe the relationship between Jimenez and petitioner, and did suggest that Jimenez had a motive to lie in her testimony. All of these comments were factually accurate or fair commentary on the evidence. No burden of proof was ever shifted onto petitioner. None of the dozen or so comments from the prosecutor about which petitioner complains were improper, and to the degree that any were, petitioner was not denied a fundamentally fair trial because of them. Habeas relief is not warranted on this claim.

■ Petitioner also claims that he was denied his right to counsel at the line-up. The right to counsel at a post-indictment line-up classification is clearly established under Supreme Court precedent. *See United States v. Wade*, 388 U.S. 218, 236–37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that ... the post-indictment lineup [is] a critical stage of the prosecution at which [defendant is] 'as much entitled to such aid [of counsel] ... as at the trial itself.'" (quoting *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932); footnote omitted)). The right to counsel at a pretrial identification does not attach, however, before "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 687, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (no counsel necessary at preindictment show-up). Because there is no clearly established Supreme Court precedent affording petitioner the right to counsel at a pre-indictment identification proceeding, habeas relief is not warranted on this ground.

■ Petitioner claims that he was denied due process when the trial court refused to give a missing witness charge and refused to allow the defense to allude to the prosecution's failure to call a promised witness. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396. The decision whether to give a missing witness charge rests within the sound discretion of the trial court. *See United States v. Torres*, 845 F.2d 1165, 1170–71 (2d Cir.1988). "Its decisions in this area will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court." *Malik v. Kelly*, No. 97 CV 4543, 1999 WL 390604, at *7, 1999 U.S. Dist. LEXIS 7942, at *21–*22 (E.D.N.Y. Apr. 6, 1999) (quotations omitted).

The trial court acted within its discretion in refusing to give a missing witness charge in the instant case. Under New York law, the party seeking the missing witness charge

> must sustain an initial burden of showing that the opposing party has failed to call a witness who could be expected to have knowledge regarding a material issue in the case and to provide testimony favorable to the opposing party. The burden then shifts to the opposing party, in order to defeat the request, "to account for the witness' absence or otherwise demonstrate that the charge would not be appropriate. This burden can be met by demonstrating that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not 'available,' or that the witness is not under the party's 'control'

such that he would not be expected to testify in his or her favor."

*People v. Macana,* 84 N.Y.2d 173, 615 N.Y.S.2d 656, 639 N.E.2d 13 (1994) (quoting *People v. Gonzalez,* 68 N.Y.2d 424, 509 N.Y.S.2d 796, 502 N.E.2d 583, 586 (1986); further citations omitted); *see also Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893) ("The rule . . . in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.").

In the instant case, witness Gonzalez was standing beside witness Diaz during the robbery and he told detectives at the scene that he had seen the perpetrator's face and could identify him. *See* Trial Tr. at 361–62, 514. It seems reasonable to therefore conclude that Gonzalez would likely have provided testimony favorable to the prosecution—in particular, that he too would identify petitioner as the man who stuck a gun in Diaz's stomach. Gonzalez was not called to the stand by the prosecutor, presumably because Gonzalez could not identify petitioner from a line-up on the day of the robbery. In denying petitioner's request for a missing witness charge, the trial court stated that petitioner had failed to demonstrate that Gonzalez could be expected to have knowledge regarding a material issue:

> Well, I think you have to establish that the uncalled witness Gonzalez is knowledgeable about [a] pending material issue, that would be identification, but I don't think he is knowledgeable about that issue if he cannot identify either the defendant in a lineup, and that witness would be expected to testify as to things to have—or to show or establish.
>
> It would be expected to testify favorably for the People if he had I.D.'d the

defendant in the lineup, that would be favorable to the People but he said he could not identify anybody in the lineup. So, how would his testimony be favorable to the People or be expected to be favorable to the People? . . . That's denied.

Trial Tr. at 514–16.

The trial court's conclusion is based on faulty reasoning and is clearly erroneous. As the trial court acknowledged, witness Gonzalez stated to police that he saw the face of the man who pointed a gun at Diaz and that he could identify Diaz's assailant. Diaz identified petitioner as his assailant. If petitioner were truly the assailant, then logically Gonzalez would also identify petitioner as Diaz's assailant. A second identification of petitioner as the assailant would be material in a case in which other evidence of petitioner's guilt was arguably rather weak. One would therefore have every reason to assume that the prosecution would call Gonzalez to the stand in order to provide a corroborating identification of petitioner as Diaz's assailant. Because the prosecution did not call Gonzalez, the jury should have been instructed that it could conclude that Gonzalez's testimony, if produced, would have been unfavorable to the prosecution.

The fact that Gonzalez could not identify petitioner at a line-up on the day of the crime demonstrates precisely why such an instruction to the jury would have been proper. Although Gonzalez would be expected to provide material testimony favorable to the prosecution—based upon the conjunction of Gonzalez's statement to the police that he could identify the assailant and Diaz's testimony identifying petitioner as the assailant—in reality Gonzalez would have testified that he could *not* identify petitioner. Instead of learning that Gonzalez, if called to testify, would have provided testimony unfavorable to the prosecution, the jurors learned nothing

about Gonzalez. As petitioner cogently argued in his letter seeking leave to appeal to the New York Court of Appeals; "It would be ironic indeed if the fact that the witness's prospective testimony was known, and was indeed unfavorable to the People, could make the request for a missing witness charge weaker than if the uncalled witness's prospective testimony were not known." June 6, 2000 Letter from John Crow to Hon. George Bundy Smith at 2.

This court concludes that the trial court's evidentiary ruling was erroneous and an abuse of its discretion. *Cf. People v. Gonzalez*, 68 N.Y.2d 424, 509 N.Y.S.2d 796, 502 N.E.2d 583 (1986) (robbery conviction reversed for failure to give missing witness charge where the victim's husband, who witnessed the assault, was not called by the prosecution to identify defendant). Nonetheless, habeas relief is not warranted on this ground.

Contrary to respondent's assertion, evidence of petitioner's guilt was not overwhelming. It was, however, strong. Petitioner was identified by Diaz as one of the perpetrators and the evidence was overwhelming that a vehicle traced to him was the getaway car. Although a missing witness charge may have weakened the force of Diaz's identification, there is no reasonable possibility that the jury would have returned a different verdict had it been given. The failure to instruct by itself did not so infect the entire trial that the resulting conviction violates due process. Habeas relief is not warranted.

In argument defense counsel thoroughly attacked the key testifying eyewitness, using the failure of Gonzalez to testify to buttress his argument. Tr. at 557, 558, 559, 560, 561, 567. The argument did lose some of its edge because of the court's reference to the jury's not speculating about what a missing witness would have said. *Id.* at 559. On the whole however, nothing was lost by lack of a missing witness charge.

■ Finally, petitioner claims that he was denied a fair and impartial hearing to determine whether identification evidence was gained as a direct product of illegal police procedures. Petitioner raised a Fourth Amendment claim in the state courts, but did not argue that he was denied a fair and impartial hearing on the claim. His articulation of the Fourth Amendment claim in this habeas proceeding likely stems from his recognition that under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a federal habeas court is barred from reviewing the merits of a Fourth Amendment claim so long as the state has provided petitioner with the opportunity for a full and fair litigation of his claim. Because petitioner has never presented this particular claim to the state courts, it is technically unexhausted. Nonetheless, the claim could have been raised on direct appeal and would now be barred from review because petitioner has already had the one direct appeal to which he is entitled under New York law. The claim may therefore be deemed by this court to be exhausted, though procedurally barred from further review.

■ At any rate, the claim is without merit. A pretrial suppression hearing was held with respect to the Fourth Amendment claim and petitioner likewise raised it on direct appeal, where it was rejected by the Appellate Division. Petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment claim. Petitioner's assertion that he was not afforded a full and fair opportunity to litigate the Fourth Amendment claim is meritless. Habeas relief is not warranted on the claim.

### VII. Conclusion

The petition for a writ of habeas corpus is denied.

A certificate of appealability is granted with respect only to the trial court's failure to provide petitioner with a missing witness charge, in violation of his right to due process and a fair trial. No certificate of appealability is granted with respect to any of petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a further certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.