■ In the Matter of the Estate of DOROTHY C. WITHERILL, Deceased. CENTRAL NEW YORK COMMUNITY FOUNDATION, Respondent-Appellant; E. TEFFT BARKER, Individually and as Coexecutor of DOROTHY C. WITHERILL, Deceased, Appellant-Respondent, and Estate of DOROTHY RITCHIE, Deceased, Individually and as Coexecutor of DOROTHY C. WITHERILL, Deceased, Respondent. [828 NYS2d 722]—

Rose, J. Cross appeals (1) from an order of the Surrogate's Court of Madison County (McDermott, S.), entered August 1, 2005, which, inter alia, denied all commissions to respondent E. Tefft Barker as coexecutor of decedent's estate, and (2) from an order and judgment of said court, entered December 9, 2005, which, inter alia, surcharged respondents in the amount of $35,055.

For many years before her death in 1998 at the age of 96, decedent, Dorothy C. Witherill, employed respondent E. Tefft Barker as her attorney and, after his retirement from the practice of law in 1984, as her financial advisor at a fee of $17,000 per month. Dorothy Ritchie worked as Barker's legal secretary and then, shortly before Barker retired to Florida, she became decedent's administrative assistant and attorney-in-fact. Thereafter, Barker continued to be in contact with Ritchie regarding decedent's financial affairs. Upon decedent's death and as designated in her will, Barker and Ritchie became the coexecutors of her estate. However, Barker continued to exercise sole decision-making authority over decedent's assets and Ritchie's role was largely to carry out his directives.

When Barker and Ritchie filed their final accounting on December 10, 2003, petitioner, the sole residuary beneficiary of the estate, filed numerous objections. After a nonjury trial, Surrogate's Court imposed surcharges on the coexecutors, denied commissions to Barker and revoked his appointment for his misconduct in handling decedent's assets. Barker now appeals and petitioner cross-appeals the grant of commissions to Ritchie.

Barker contends that he met his burden of establishing that the accounting was correct, and that Surrogate's Court erred in imposing surcharges against him and denying him any commission for his services as coexecutor. We cannot agree. In a thorough and well-reasoned decision, the court applied the correct standards in assessing Barker's performance, and the record supports its findings of his self-dealing, misfeasance and gross negligence. Because he claimed to be a skilled financial advisor and was paid handsomely for such services during decedent's lifetime, he was obligated to "exercise such diligence in investing and managing assets as would customarily be exercised by prudent investors of discretion and intelligence having special investment skills" (EPTL 11-2.3 [b] [6]; *see Matter of Janes*, 90 NY2d 41, 54 [1997]). Barker's failure to meet this standard constituted negligence which justified the imposition of surcharges (*see Matter of Bank of N.Y.*, 35 NY2d 512, 518-519 [1974]; *cf. Matter of Hahn*, 93 AD2d 583, 586 [1983], *affd* 62 NY2d 821 [1984]) and, by his willful mishandling of estate assets, he forfeited his commissions (*see Matter of Donner*, 82 NY2d 574, 587 [1993]).

Barker was properly surcharged for an advance payment of $85,000 that he had directed Ritchie to make to him for his services as decedent's personal financial advisor when he learned that decedent's death was imminent. Upon decedent's death, he began acting as her fiduciary and should have returned the unearned funds to the estate (*see* EPTL 11-1.6). His belated offer to do so, made two months after completion of the hearing at which his conversion of this estate asset was established, is no defense. Nor did Surrogate's Court err in surcharging Barker an additional $92,000 that he had falsely claimed as a reimbursement from decedent. As to the surcharge for fees paid to KPMG, L.L.P. for accounting services, the record supports the court's determination that the fees were excessive and Barker should have questioned them.

There is also ample support for Surrogate's Court's finding that nearly three years after decedent's death, after all of the estate's debts and substantially all of its administration expenses had been paid, Barker removed at least one half of the

remaining assets from New York to Florida without consulting with petitioner or Ritchie, or seeking prior court approval (see SCPA 711 [7]). He was then responsible for a significant loss of these assets by authorizing, or at least ratifying, an admittedly unsuitable investment in a Merrill Lynch junk bond mutual fund. For approximately 17 months thereafter, Barker ignored that investment. His gross departure from the obligation to skillfully manage the investment and failure to preserve the principal constituted faithless misfeasance and fully justified the inclusion of lost profit or lost appreciation damages in the resulting surcharge (see Matter of Rothko, 43 NY2d 305, 321-322 [1977]; Scalp & Blade v Advest, Inc., 309 AD2d 219, 228-229 [2003]; cf. Matter of Saxton, 274 AD2d 110, 121 [2000]; Matter of Janes, 223 AD2d 20, 27-29 [1996], affd 90 NY2d 41 [1997]). The fact that other investments might have appreciated in value or fared less well does not insulate Barker from liability for his gross neglect (see Matter of Bank of N.Y., supra at 517-518). Nor was it improper to surcharge him for the cost of legal advice incurred in determining whether to sue Merrill Lynch for this loss. Although this $10,000 fee was billed to the estate, Barker had incurred it in an attempt to rectify his own persistent neglect, and legal action could not be advised because he had ratified the junk bond fund.

Further, the record confirms that Barker intentionally and unreasonably delayed making distributions of estate assets to petitioner. Thus, we will not disturb the conclusion of Surrogate's Court that Barker acted in bad faith, motivated solely out of spite due to petitioner's separate litigation against him challenging a charitable remainder unitrust which he had set up for decedent, naming himself and his wife as income beneficiaries. According our usual deference to the trial court's credibility determinations and resolution of conflicting evidence (see Matter of Duell, 258 AD2d 382, 383 [1999]; Matter of Fish, 134 AD2d 44, 47 [1987]), we agree that Barker's pattern of misconduct fully warranted the denial of his commissions and revocation of the letters issued to him (see SCPA 711 [2], [7]).

Finally, as to petitioner's contention that Ritchie should have been denied commissions and held jointly and severally liable for the surcharges imposed upon Barker, we note that Surrogate's Court acknowledged the cofiduciary liability rule (see e.g. Zimmerman v Pokart, 242 AD2d 202, 203 [1997]), but declined to apply it because there was no proof that Ritchie had participated in or been aware of Barker's misfeasance. Given Ritchie's passive, subservient role in handling estate assets and the assessment of surcharges against her in proportion to her

conduct, we cannot say that the court abused its discretion (*see Matter of Goldstick*, 177 AD2d 225, 239 [1992], *mod on rearg* 183 AD2d 684 [1992]).

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the order and order and judgment are affirmed, without costs.