■ SANDRA L. HOLBROOK, Appellant, v BRITTANY J. PRUIKSMA, Respondent. [842 NYS2d 591]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Doyle, J.), entered June 8, 2006 in Greene County, upon a verdict rendered in favor of defendant.

On May 7, 2004, plaintiff's car was rear-ended by defendant's car and thereafter plaintiff commenced this action to recover for her alleged injuries. Following a trial, a jury found that defendant's negligence was the sole cause of the accident, but that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d). Plaintiff's motion to set aside the verdict was denied and this appeal ensued.

Noting that defendant failed to call any witnesses at trial and thus arguing that her own proof was "uncontroverted," plaintiff claims that the jury's finding of no serious injury should be set aside as against the weight of the evidence. We are unpersuaded. The standard for making such a determination is "whether the evidence so preponderate[d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence" (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks and citations omitted]). Upon our review of the evidence, we cannot conclude that the proof presented so preponderated in favor of plaintiff that the verdict finding that she did not sustain a serious injury could not have been reached on any fair interpretation of the evidence.

According to plaintiff, she began suffering from numerous ail-

ments within a few days of the May 2004 accident, many of which continued until the April 2006 trial in this matter. Specifically, following the accident, she complained of back pain, neck pain and stiffness, frequent headaches, dizziness, confusion, concentration and memory problems, uncoordination and fatigue. Completely lacking from her case, however, was objective proof of these particular injuries. While she went to the hospital immediately following the accident and again two days later, she made no complaints of neck pain, her neck on both occasions was supple with a full range of motion without pain, her cranial nerves were intact, her cervical spine was normal and her orientation was normal. Additionally, a CAT scan and MRI of her brain, as well as X rays of her back, were all normal following the accident. Indeed, it was established during the testimony of plaintiff's treating neurologist that she always had entirely normal physical and neurological examinations except for her subjective complaints.

Additionally, suffice it to say, plaintiff's testimony concerning the nature and extent of her injuries as a result of the subject accident was seriously undermined on cross-examination. She was questioned about a significant history of similar, if not identical, preexisting medical complaints, mental-health related complaints and interpersonal problems at work and at home. In particular, she had a motor vehicle accident in 1989 following which she made complaints of fatigue, nervousness, depression, back pain, neck pain and stiffness, dizziness and loss of balance. Many such complaints continued in the ensuing 15-year period prior to this accident. Notably, more often than not during her cross-examination, plaintiff could not recall whether she told her current treating physicians about these prior complaints.

The cross-examinations of plaintiff's experts were equally desolating in terms of her ability to demonstrate a serious injury. By way of example, on direct examination, plaintiff's treating chiropractor opined to a reasonable degree of medical certainty that, "based upon the history . . . indicating she had no prior neck complaints," the subject auto accident was the cause of her current neck pain. On cross-examination, it was revealed that plaintiff never told him about the 1989 motor vehicle accident or her resulting symptoms from it, including neck pain and stiffness. Nor did this chiropractor know that she was treated by another chiropractor for these complaints following that accident. He also did not know that she had previously been diagnosed with cervical cranial syndrome. It was further revealed during his cross-examination that plaintiff denied having migraine headaches before the subject accident despite medi-

cal records indicating otherwise. Indeed, plaintiff never told this treating chiropractor that just one day before the subject accident (which was four days before her first appointment with him), she saw her primary care physician with complaints of joint pain and stiffness.

Next, plaintiff's treating neurologist testified to a reasonable degree of medical certainty that she suffered from concussive syndrome (i.e., postconcussion syndrome) and that same was caused by the subject motor vehicle accident. He further opined that her prognosis was "guarded and by that [he meant] that it is unlikely that she will completely recover fully to the *pre-accident state*" (emphasis added). Cross-examination revealed that the neurologist was not well versed in plaintiff's actual "pre-accident state." For example, he acknowledged during cross-examination that plaintiff did not tell him, or a colleague who initially treated her, that she had the 1989 accident following which she made complaints of loss of balance, dizziness, neck pain and neck stiffness. Nor did she tell either treating neurologist about her prior cervical cranial syndrome diagnosis, prior treatment for headaches or prior chiropractic treatment. Nor did either know that she was taking prescription medication on the day of the subject accident for migraines, anxiety and depression. She also never reported her prior complaints of fatigue, dizziness, depression or poor concentration. In fact, plaintiff reported that she had no "significant past medical history." Similarly, plaintiff's treating psychologist knew about the 1989 motor vehicle accident but was informed that she had no resulting injuries. Therefore, the verdict of no serious injury was not against the weight of the evidence.

Finally, we find no abuse of discretion in Supreme Court's denial of plaintiff's request for a missing witness charge with respect to a physician who conducted an independent medical examination of her 2½ weeks before trial but then thereafter never provided defense counsel with an oral or written report of any findings.* Since it was established that neither party, particularly defendant, had any idea about the substance of this physician's findings, plaintiff did not meet her burden of demonstrating that his testimony would be expected to be favorable to defendant (*see e.g. People v Gonzalez*, 68 NY2d 424, 427

---

* Significantly, Supreme Court found credible defense counsel's representations that, despite efforts, he never learned of this physician's findings. Of note, there is no indication what disputed issue this physician's examination was meant to address, i.e., liability, which plaintiff in any event succeeded in proving, serious injury or damages (*see e.g. Leahy v Allen*, 221 AD2d 88, 91-92 [1996]; *Savage v Shea Funeral Home*, 212 AD2d 875, 876 [1995]; *Burstein v Richmond Mem. Hosp. & Health Ctr.*, 167 AD2d 151, 151-152 [1990]).

[1986]; *see also* Prince, Richardson on Evidence § 3-140 [Farrell 11th ed]). In any event, even assuming that plaintiff sustained her initial burden of demonstrating entitlement to the charge (*see People v Gonzalez, supra* at 427-428), defendant "otherwise demonstrate[d] that the charge would not be appropriate" (*id.* at 428) given the proof that defense counsel never received a copy of the physician's report. Indeed, since plaintiff's counsel was able to comment during summation on defendant's failure to call any witnesses at trial, particularly an independent medical examination physician, and also given the undeniable weakness of plaintiff's case on serious injury, any error in failing to give the charge was harmless and did not deprive her of a fair trial (*see Goverski v Miller*, 282 AD2d 789, 791 [2001]; *see generally DeVaul v Carvigo Inc.*, 138 AD2d 669, 670 [1988], *lv denied* 72 NY2d 806 [1988], *appeal dismissed* 72 NY2d 914 [1988]).

Cardona, P.J., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.