■ Sallie E. Herman, Appellant, v Gerald J. Moore et al., Respondents. [21 NYS3d 254]—

Judgment, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about July 9, 2014, upon a jury verdict in defendants' favor, unanimously reversed, on the law, without costs, and the matter remanded for a new trial.

Plaintiff claims that she sustained a permanent, consequential limitation of her neck and back as a result of a motor vehicle accident. The accident occurred while she was on her way to go apple picking with other members of her Jehovah's Witness congregation. Four years before the motor vehicle accident, plaintiff had injured her back when a bookcase fell on her. She saw an orthopedist one time in connection with the earlier injury, and treated with a physical therapist for one month.

Plaintiff claims that there were numerous errors made by the court during the trial, and that the court demonstrated a decided bias against her. Two of the statements and rulings to which plaintiff objects arose out of plaintiff's religious affiliation. Before the trial commenced, defendants moved to preclude plaintiff from highlighting that she was a Jehovah's Witness. The court granted the motion, and directed plaintiff to testify only that she was with "friends" when the accident occurred. The court did, however, make clear that plaintiff could testify that, because of her injuries, she was unable to participate in door-to-door proselytizing.

After the jury retired, one of the jurors who had originally been an alternate but was now on the deliberating panel, alerted the court that he had discerned from plaintiff's testimony that she was a Jehovah's Witness, and that he was a Jehovah's Witness as well. He testified under questioning from the court and from counsel for plaintiff and defendants that he might be "a little more likely" to believe plaintiff because of the knowledge he had about her religion. Based on that statement, the court granted defendants' counsel's request to disqualify the juror. In questioning the juror, the court referred to plaintiff's religious affiliation.

Plaintiff also takes issue with the court's decision to give a missing witness charge. The charge was related to her testimony that, in connection with the earlier accident, she saw a Dr. Rose, an orthopedist who referred her to physical therapy. Plaintiff did not call Dr. Rose as a witness, nor did she introduce into evidence any of the medical records generated by him or the physical therapy provider. It is unclear from the record when defendants requested the missing witness charge related to Dr. Rose.

Plaintiff requested a similar charge with respect to Dr. Rene Elkin, a neurologist who defendants called as their expert witness. Dr. Elkin testified that she generated a report concluding that plaintiff's neck and back injuries were degenerative in nature and were not causally related to the accident. Prior to trial, plaintiff had served a subpoena on Dr. Elkin requesting that she bring all of the records that she relied on in preparing the report, including notes she made in connection with her physical examination of plaintiff. However, Dr. Elkin testified at trial that she no longer had the notes. Plaintiff requested that the court issue a missing documents charge with respect to Dr. Elkin's notes. The court denied the request to charge, stating that Dr. Elkin had testified that the notes were subsumed in her report.

While we are disturbed by some of the court's actions in conducting the trial, we find that, on the whole, it did not demonstrate a level of bias warranting reversal (*see Pickering v Lehrer, McGovern, Bovis, Inc.*, 25 AD3d 677, 679 [2d Dept 2006]). However, as discussed below, there are other errors which do require a new trial.

The party seeking a missing witness charge has the burden of promptly notifying the court when the need for such a charge arises (*see Spoto v S.D.R. Constr.*, 226 AD2d 202, 204 [1st Dept 1996]). The purpose of imposing such a burden is, in part, to permit the parties "[to] tailor their trial strategy to avoid substantial possibilities of surprise" (*People v Gonzalez*, 68 NY2d 424, 428 [1986] [internal quotation marks and citation omitted]). Once the party requesting the charge meets its initial burden, the party opposing the request can defeat it by demonstrating that, among other things, the witness was not available, was outside of its control, or the issue about which the witness would have been called to testify is immaterial (*id.*).

Here, the record does not reflect when defendants asked for a missing witness charge for Dr. Rose. This presents the possibility that they did not do so until after plaintiff presented her case. Had that been so, plaintiff would have lost any opportunity to account for Dr. Rose's absence, argue that plaintiff did not have the requisite control over him, or attempt to procure his appearance. Accordingly, since there is no indication that defendants met their burden, we find that the missing witness charge was improperly given.

In any event, the court's stated basis for the missing witness charge was unreasonable. The court explained to the jury that it could infer, because plaintiff did not call Dr. Rose, that he would have testified that the current pain plaintiff was experiencing was related to the accident from 2003, when a bookcase fell on her, and not to the motor vehicle accident. However, the court's surmise that the previous injury had not fully resolved was speculative. Indeed, plaintiff testified that she received only one month of treatment for that injury, and never made any statement even suggesting that the injuries allegedly caused by defendants were actually the sequelae of an earlier trauma. Accordingly, there would have been no purpose for Dr. Rose to testify. The inference the court invited the jury to make simply had no basis in fact, and, by giving the missing witness charge, the court prejudiced the plaintiff. The lack of justification for the missing witness charge is made even more evident by the court's refusal to charge the jury that

the accident aggravated an earlier injury. In other words, had the court truly believed that a basis existed to believe that plaintiff still suffered from injuries suffered in the bookcase accident, it would have been inconsistent not to charge the jury that it could find that the vehiclar accident aggravated those injuries.

Finally, while Dr. Elkin did not, as plaintiff suggests, testify that she "destroyed" her notes, she did concede that she did not comply with the subpoena, which required her to bring with her to court the notes that she used in generating her report on behalf of defendants. The failure to produce those notes affected plaintiff's ability to cross-examine defendants' expert and was fundamentally unfair to plaintiff. At the least, it would have been appropriate for the court to issue an adverse inference charge (*see Minaya v Duane Reade Intl., Inc.*, 66 AD3d 402, 403 [1st Dept 2009]). That Dr. Elkin testified that the notes were subsumed in the report is of no moment. Plaintiff was entitled to independently investigate that claim without having to rely on Dr. Elkin's own assurances that the notes were themselves of no probative value. Defendant argues that, before plaintiff requested the missing documents charge, but after the jury had been impaneled, the court offered plaintiff the option of marking the case off the calendar so she could enforce the subpoena. However, because the parties had already selected a jury, this was not a legitimate remedy. Concur—Mazzarelli, J.P., Renwick, Andrias and Manzanet-Daniels, JJ.