Matter of Lewis (2018 NY Slip Op 00941)





Matter of Lewis


2018 NY Slip Op 00941


Decided on February 9, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 9, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, DEJOSEPH, NEMOYER, AND CURRAN, JJ.


1460 CA 16-02231

[*1]IN THE MATTER OF THE ESTATE OF ROBYN R. LEWIS, DECEASED. JAMES ROBERT SIMMONS, PETITIONER-RESPONDENT; MEREDITH M. STEWART, RONALD L. LEWIS, RONALD L. LEWIS, II, AND JONATHAN K. LEWIS, OBJECTANTS-APPELLANTS. 






WITTENBURG LAW FIRM, LLC, SYRACUSE, D.J. & J.A. CIRANDO, ESQS., SYRACUSE (JOHN A. CIRANDO OF COUNSEL), FOR OBJECTANTS-APPELLANTS. 
MENTER, RUDIN & TRIVELPIECE, P.C., SYRACUSE (JULIAN B. MODESTI OF COUNSEL), FOR PETITIONER-RESPONDENT. 


 Appeal from a decree of the Surrogate's Court, Jefferson County (Peter A. Schwerzmann, S.), entered September 6, 2016. The decree determined that the last will and testament of Robyn R. Lewis, deceased, dated July 15, 1996, is the only original last will and testament executed on that date. 
It is hereby ORDERED that the decree so appealed from is unanimously affirmed without costs.
Memorandum: Robyn R. Lewis (decedent) married James A. Simmons (ex-husband) in Texas in August 1991. On July 15, 1996, decedent and the ex-husband executed several estate planning documents at the office of their attorney in Texas. In a last will and testament (1996 will), decedent appointed the ex-husband, who at that time was still married to her, as executor of the 1996 will and beneficiary of all of her property. Also pursuant to the 1996 will, in the event that the ex-husband predeceased decedent, petitioner, the ex-husband's father, was named as the alternate executor and alternate beneficiary.
Upon their divorce in 2007, decedent was awarded real property in Clayton, New York (Clayton property) that decedent and the ex-husband had purchased from decedent's mother and an uncle several years earlier. Decedent relocated permanently to that residence, and she lived there until her death in March 2010. No will was found during a diligent postmortem search of decedent's residence and possessions.
Following decedent's death, amended letters of administration were issued to decedent's parents, who thereafter renounced their interest in the Clayton property so that it would pass to decedent's brothers. Several months later, petitioner commenced this proceeding seeking probate of the 1996 will and issuance of letters testamentary. Petitioner alleged that, because decedent's testamentary disposition with respect to the ex-husband had been revoked by operation of law upon their divorce (see EPTL 5-1.4 [a]), he was entitled to decedent's entire estate as the sole remaining beneficiary of the 1996 will. Objectants, who are decedent's parents and brothers, filed objections and supplemental objections to probate. Following a hearing, Surrogate's Court dismissed the objections and admitted the 1996 will to probate. Among his findings, the Surrogate noted that it was "not clear from the testimony of [the ex-husband] if the decedent and [the ex-husband] left the attorney's office with four original instruments or one original and three copies."
Upon appeal to this Court, the majority, as relevant to the present appeal, rejected the dissent's position that reversal was warranted on the ground that petitioner, by failing to account [*2]for all of the alleged copies of the 1996 will, failed to rebut the presumption that the 1996 will was revoked by an act of destruction performed by decedent (see EPTL 3-4.1 [a] [2] [A]) because objectants never raised such a challenge to probate of the 1996 will (Matter of Lewis, 114 AD3d 203, 207-208 [4th Dept 2014], mod 25 NY3d 456 [2015]; see id. at 219-224 [Peradotto, J., dissenting]). The dissent responded that "[w]here, as here, the testimony of petitioner's own witnesses raised a question of fact whether the will produced for probate was the original will, or one of several wills unproduced and unaccounted for, petitioner failed to meet [his] burden" as the proponent of admitting the 1996 will to probate (id. at 224). The dissent also asserted alternatively that, if it would be unfair to petitioner to decide the issue on appeal, then the appropriate remedy was to "remit the matter to Surrogate's Court to make a determination whether the 1996 will was executed in multiples" (id.).
On appeal, the Court of Appeals held, in pertinent part, that "the evidence before the Surrogate raised a most serious, and unresolved, question as to whether the 1996 will had been otherwise revoked, and while that question persisted the will should not have been admitted to probate" (Lewis, 25 NY3d at 462). More particularly, the Court of Appeals determined that it was "manifest that the Surrogate's attention was drawn to the existence of will duplicates, but the consequently arising issues as to the will's validity were not resolved as they should have been in accordance with" the Court's precedent (id. at 463; see Crossman v Crossman, 95 NY 145, 152 [1884]). The Court explained that "[p]etitioner was required not merely to exclude the possibility, but to rebut the legal presumption of revocation, sufficiently raised by the ex-husband's testimony as to the existence of will duplicates, one of which had been kept, but was not found after decedent's passing, at her post-divorce residence" (Lewis, 25 NY3d at 463). The Court further "recognize[d] that the crucial issues raised by the duplicate will testimony were not framed for resolution as they should have been and that this may have operated to deprive petitioner of a fair opportunity to avoid or rebut the presumption of revocation which otherwise must control the outcome of this proceeding" (id.). Thus, the Court remitted the matter to the Surrogate for further proceedings (see id.; see also id. at 463-465 [Pigott, J., concurring]).
Following a hearing upon remittal from the Court of Appeals, the Surrogate determined that the 1996 will, which was previously admitted to probate, is decedent's only original will. We affirm.
Objectants contend that the Surrogate erred in failing to draw an adverse inference against petitioner based upon his failure to call the Texas attorney as a witness at the hearing upon remittal. We reject that contention. "[T]he missing witness rule may be applied in a nonjury civil trial, where the trial court, as finder of fact, is permitted to draw a negative inference against a party failing to call a witness" (Matter of Adam K., 110 AD3d 168, 177 [2d Dept 2013]). "The preconditions for this [inference], applicable to both criminal and civil trials, may be set out as follows: (1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control' of the party against whom the [inference] is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (DeVito v Feliciano, 22 NY3d 159, 165-166 [2013]). The party seeking a missing witness inference has the initial burden of setting forth the basis for the request " as soon as practicable' " (People v Carr, 14 NY3d 808, 809 [2010]; see People v Gonzalez, 68 NY2d 424, 428 [1986]; Herman v Moore, 134 AD3d 543, 545 [1st Dept 2015]; Buttice v Dyer, 1 AD3d 552, 552-553 [2d Dept 2003]). "The purpose of imposing such a burden is, in part, to permit the parties [to] tailor their trial strategy to avoid substantial possibilities of surprise' " (Herman, 134 AD3d at 545, quoting Gonzalez, 68 NY2d at 428). "Whether such a request is timely is a question to be decided by the trial court in its discretion, taking into account both when the requesting party knew or should have known that a basis for a missing witness [inference] existed, and any prejudice that may have been suffered by the other party as a result of the delay" (Carr, 14 NY3d at 809). Once the party seeking the inference establishes prima facie entitlement to it, the opposing party can defeat the request by demonstrating that, among other things, the testimony would be cumulative, the witness would not be expected to testify in the opposing party's favor, or the witness is not available (see Gonzalez, 68 NY2d at 428; Herman, 134 AD3d at 545).
Here, contrary to objectants' contention, their request for an adverse inference was untimely (see 3134 E. Tremont Corp. v 3100 Tremont Assoc., Inc., 37 AD3d 340, 340 [1st Dept 2007]; Chary v State of New York, 265 AD2d 913, 914 [4th Dept 1999]; see also Midstate Mut. [*3]Ins. Co. v Camp Rd. Transmissions, Inc., 103 AD3d 1176, 1177 [4th Dept 2013]; see generally Carr, 14 NY3d at 809). The record establishes that objectants, through direct contact with the attorney, were aware at the time of the initial hearing that the attorney may have had material information, but that he was uncooperative. During the hearing upon remittal, the ex-husband testified at length about the attorney's involvement in drafting and supervising the execution of the 1996 will, and objectants' counsel elicited testimony from the ex-husband on cross-examination that the attorney would have material information. Nonetheless, objectants did not request a missing witness inference at any point during petitioner's direct case or before the conclusion of the hearing, including after petitioner's counsel indicated that petitioner had no other witnesses. Instead, objectants requested an adverse inference for the first time in their written closing statement submitted several months after the hearing. As a result of the delay, objectants deprived petitioner of "any opportunity to account for [the attorney's] absence, argue that [he] did not have the requisite control over [the attorney], or attempt to procure [the attorney's] appearance" (Herman, 134 AD3d at 545; see Mereau v Prentice, 139 AD3d 1209, 1211-1212 [3d Dept 2016]; see generally Carr, 14 NY3d at 809).
We also conclude that objectants did not meet their burden inasmuch as they failed to establish that the attorney would be expected to provide favorable testimony to petitioner (see Holbrook v Pruiksma, 43 AD3d 603, 605-606 [3d Dept 2007]; Sandoval v Stanley Works & Tools Div., 261 AD2d 885, 885 [4th Dept 1999]), and that the attorney was available to testify (see Pasquaretto v Cohen, 37 AD3d 440, 441 [2d Dept 2007], lv denied 9 NY3d 801 [2007]; Cohen v Lukacs, 272 AD2d 501, 501 [2d Dept 2000]).
Objectants further contend that the Surrogate erred in finding that decedent executed only one original will because the ex-husband's testimony, which was credited by the Surrogate, was inconsistent and unreliable. We reject that contention. "A will may . . . be revoked not only by means of a writing executed in the manner of a will, but by the testator's act of destroying it with revocatory intent (EPTL 3-4.1 [a] [2] [A] [i]), which act achieves the revocatory purpose even if there remain will duplicates outstanding" (Lewis, 25 NY3d at 462; see Crossman, 95 NY at 152). The fact that a testator has "revoked a will by destruction is strongly presumed where the will, although once possessed by the testator, cannot be found posthumously despite a thorough search" (Lewis, 25 NY3d at 462; see e.g. Matter of Fox, 9 NY2d 400, 407-408 [1961]; Matter of Staiger, 243 NY 468, 472 [1926]). "The presumption, once raised, stands in the place of positive proof' . . . and must be rebutted by the will's proponent as a condition of probate" (Lewis, 25 NY3d at 462, quoting Staiger, 243 NY at 472). Here, however, if petitioner could establish that decedent executed only one original will, he would "avoid . . . the presumption of revocation which otherwise must control the outcome of this proceeding" (Lewis, 25 NY3d at 463; see id. at 464 [Pigott, J., concurring]).
Upon our review of the record, we see no reason to disturb the Surrogate's findings, "which are entitled to great weight inasmuch as they hinged on the credibility" of the ex-husband, the sole witness to testify at the hearing (Matter of Lee, 107 AD3d 1382, 1384 [4th Dept 2013] [internal quotation marks omitted]; see Matter of Witherill, 37 AD3d 879, 881 [3d Dept 2007]). Contrary to objectants' contention, it cannot be said that the Surrogate erred in crediting the ex-husband's testimony that he and decedent each signed one original will, one original power of attorney, and one original health care proxy, and that the attorney's office made three photocopies of each of those estate planning documents. Despite the uncertainty with respect to the ex-husband's testimony at the initial hearing, his testimony at the hearing upon remittal unequivocally clarified that there was only one original of each of six estate planning documents, i.e., his will, power of attorney, and health care proxy, and decedent's will, power of attorney, and health care proxy. We conclude that the other instances of inconsistent testimony alleged by objectants have no bearing on the issue whether decedent executed only one original will and were otherwise adequately clarified by the ex-husband.
We have considered objectants' remaining contentions and conclude that they are without merit.
Entered: February 9, 2018
Mark W. Bennett
Clerk of the Court