Matter of Shambo (2019 NY Slip Op 01280)





Matter of Shambo


2019 NY Slip Op 01280


Decided on February 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 21, 2019

526709

[*1]In the Matter of the Estate of PENNY LEE SHAMBO, Deceased. MELISSA THOMPSON, as Administrator of the Estate of PENNY LEE SHAMBO, Appellant; SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 1.)
In the Matter of the Estate of PENNY LEE SHAMBO, Deceased. ROWLANDS & LeBROU, PLLC, Appellant; SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 2.)

Calendar Date: January 11, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Aarons, JJ.


Rowlands & LeBrou, PLLC, Latham (Nicholas J. Orecki of counsel), for appellants.
Stephen M. Dorsey, County Attorney, Ballston Spa (Hugh G. Burke of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Surrogate's Court of Saratoga County (Kupferman, S.), entered July 20, 2017, which, among other things, in proceeding No. 1 pursuant to SCPA article 22, partially granted respondent's motion for summary judgment on its objections to petitioner's accounting.
This appeal arises out of the administration of the estate of Penny Lee Shambo (hereinafter decedent), who died intestate on September 26, 2009 as a resident of Saratoga County. However, for purposes of this appeal, we must rewind to November 24, 2007, when decedent's spouse, William J. Shambo Jr. (hereinafter Shambo), passed intestate. At the time of his passing, Shambo resided in a home, located in the Town of Rotterdam, Schenectady County, that he owned with decedent and which had an outstanding mortgage of $49,603.70.
In May 2008, Schenectady County Surrogate's Court granted petitioner Melissa Thompson, the daughter of Shambo and decedent, limited letters of administration in Shambo's estate. Two months later, Thompson obtained an appraisal of the real property owned by Shambo and decedent, which was given an "as is" value of $125,000. Thompson thereafter sought and, by a March 2009 order, received judicial authority to establish a special needs trust for the benefit of decedent, who had been receiving Medicaid benefits since June 2004. Thompson also received judicial authority to sell the property to herself, her husband, her half sister (who is the daughter of Shambo, but not decedent) and her half sister's husband at the discounted price of $117,500 "in order to have a quick closing and to expedite the funding of" the special needs trust. The March 2009 order further directed that the proceeds from the sale of the real property be used to fund the special needs trust after reimbursing Thompson for certain expenses — in particular, property expenses totaling $11,634.33, estate administration expenses totaling $12,368.91 and the payment of counsel fees in the amount of $7,055 [FN1]. Thompson was ultimately reimbursed, from Shambo's estate, for the $12,368.91 spent on administration expenses, but her reimbursement for the $11,634.33 spent on the property, as well as the counsel fee award, was dependent on the sale of the real property to herself and her three relatives. That sale never occurred.
Roughly seven months after entry of the March 2009 order authorizing the sale of the property, decedent died. Perplexingly, and without explanation in the record, Thompson did not seek clarification or modification of the March 2009 order and she did not petition Surrogate's Court for letters of administration in decedent's estate until November 2012, more than three years after decedent's death. All the while, Thompson continued to pay various expenses relating to the real property, which included sporadic payments toward the outstanding mortgage.
In December 2012, after the Saratoga County Surrogate's Court granted Thompson letters of administration in decedent's estate, respondent filed a claim against decedent's estate for reimbursement of $466,625.59 — the amount of Medicaid benefits that decedent had received from June 1, 2004 through her death on September 26, 2009 — plus interest. Respondent thereafter sought to compel an accounting in decedent's estate. In response, Thompson filed a petition for judicial settlement of the account (proceeding No. 1), along with a formal accounting, which listed unpaid administration expenses totaling $84,289.26. These [*2]administration expenses included the unpaid amounts due under the March 2009 order, additional counsel fees incurred to settle and close out the administration of Shambo's estate, a $6,000 commission to Thompson and the reimbursement of court and funeral expenses in decedent's estate, as well as costs relating to the real property from November 2008 through July 2013. Respondent filed formal objections to the accounting, alleging that Thompson failed to sell the property within a reasonable amount of time and seeking, among other things, an order imposing surcharges on Thompson.
Thereafter, by a November 2013 order issued upon consent of the parties, Thompson was authorized and directed to list the property for $115,000 and sell it for a minimum of $110,000 and to place the sale proceeds in escrow pending a determination as to whether respondent's Medicaid claim had priority over the existing mortgage on the property [FN2]. About a week later, Wells Fargo Bank, N.A., the mortgage holder, commenced an action in Schenectady County to foreclose on the property. The foreclosure action was later transferred to Surrogate's Court and consolidated with the administration of decedent's estate.
In April 2015, over five years after decedent's death and more than 16 months after Thompson was authorized to list and sell the property, Surrogate's Court granted, upon the parties' stipulation, Thompson's request to sell the property to her husband for $110,000 and directed that the sale close within 30 days. The property was ultimately sold to Thompson's husband and, in July 2015, $110,064.35 was deposited with the Saratoga County Treasurer. One year later, Surrogate's Court issued a decree establishing $74,475.28 as the verified mortgage claim of Wells Fargo.
In September 2016, petitioner Rowlands & LeBrou, PLLC — counsel to Thompson as the administrator of decedent's estate — commenced proceeding No. 2 to fix and determine counsel fees (see SCPA 2110), which were alleged in the amount of $32,661.32. Following an examination of Thompson pursuant to SCPA 2211, respondent moved for summary judgment on its objections. Surrogate's Court partially granted respondent's motion for summary judgment and, based on what it found to be Thompson's improvident management of decedent's estate and dereliction of duty, removed Thompson as the administrator of the estate, denied her a commission for her role as administrator and declined to reimburse her for the unpaid administration expenses listed in her account, except for reasonable funeral expenses and the outstanding amounts due under the March 2009 order. The court further found that decedent's real property reasonably should have been sold by July 1, 2013 for $117,500 and, so as to place respondent in the position that it would have been in had such a sale occurred at that time, imposed a $14,174.74 surcharge upon Thompson. Finally, Surrogate's Court denied the payment of counsel fees to Rowlands & LeBrou out of decedent's estate, finding that the value of the legal representation provided to the estate did not justify payment of the $32,661.32 fee. Petitioners appeal.[FN3]
Respondent's objections to the accounting were largely premised upon Thompson's failure to promptly sell the real property, thereby resulting in the prolonged and unnecessary payment of the property's carrying charges and a corresponding diminution of estate assets that could be used to satisfy respondent's outstanding Medicaid claim. Thus, Surrogate's Court properly identified the dispositive question raised by respondent's objections to be whether Thompson "acted as a diligent and prudent fiduciary." "'[A] fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect'" and, when "acting on behalf of an estate[,] is required to employ such diligence and prudence to the care and management of the estate assets and affairs as would prudent persons of discretion and intelligence in their own like affairs" (Matter of Billmyer, 142 AD3d 1000, 1001 [2016], quoting Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989]; see Matter of Donner, 82 NY2d 574, 584 [1993]; Matter of Carbone, 101 AD3d 866, 868 [2012]).
We agree with Surrogate's Court that respondent came forward with prima facie evidence demonstrating Thompson's mismanagement of decedent's estate and overall dereliction of duty and that petitioners, who were required to lay bare their proof in opposition to respondent's motion (see Wasson v Bond, 80 AD3d 1114, 1115 [2011]; Johnson v Title N., Inc., 31 AD3d 1071, 1072 [2006]), failed to raise a triable question of fact precluding summary judgment on that issue. The legitimacy of respondent's objections to Thompson's unreasonable delay in selling the real property, resulting in an ongoing dissipation of the estate's assets, was readily apparent from the accounting, as well as the irrefutable timeline of events (see Matter of Carbone, 101 AD3d at 869).
As Surrogate's Court correctly noted, it did not have jurisdiction over Thompson's conduct prior to the issuance of letters of administration in decedent's estate (see generally SCPA 203). Nevertheless, Thompson's failure to comply with the March 2009 order authorizing the expedited sale of the property to her and her three relatives, as well as the unexplained three-year delay in applying for letters of administration in decedent's estate, are relevant to the underlying question of whether Thompson's delay in selling the property was unreasonable. Because decedent was not residing at the property at the time of Shambo's death and did not thereafter return to the property to reside, Thompson had access to and possession of the property for an extended period of time prior to the issuance of the letters of administration in November 2012. Thus, she was uniquely positioned to ensure an expeditious sale, so as to preserve the value of the estate's asset, once she did receive the letters of administration. Nevertheless, the property was not sold to her husband until July 2015, more than 18 months after Surrogate's Court had authorized Thompson to sell the property for at least $110,000. The evidence demonstrated that, during this 18-month period, the mortgage encumbrance increased by roughly $30,000.
Thompson's broad and conclusory testimony that she was unable to sell the property due to its poor condition was insufficient to defeat respondent's prima facie showing that she had unreasonably delayed in liquidating the estate's sole asset. Thompson did not, in opposition to respondent's motion for summary judgment, provide any documentation to substantiate her claim [*3]that she had unsuccessfully attempted to sell the house or otherwise demonstrate that she had taken any meaningful steps to sell the property for a reasonable price within a reasonable amount of time. She provided no listing for the house, no documentation of any offers received and rejected or any evidence to establish when and for how long the property was listed for sale. Under these circumstances, Surrogate's Court properly determined, as a matter of law, that respondent was entitled to summary judgment on its objection to the unreasonable length of time it took Thompson to sell the property (see Matter of Billmyer, 142 AD3d at 1002; Matter of Carbone, 101 AD3d at 869).
Thompson also challenges her removal as the administrator of the estate. SCPA 711 (2) permits the removal of a fiduciary where he or she is shown to be unfit for the execution of the office by reason of having wasted or improvidently managed the assets of an estate. Similarly, SCPA 711 (8) permits removal "[w]here [the fiduciary] does not possess the qualifications required of a fiduciary by reason of . . . improvidence . . . or who is otherwise unfit for the execution of the office." As discussed above, Thompson's delay and dilatory conduct in selling the real property caused a dissipation of the assets that would have been available to respondent absent such delay. Accordingly, we discern no abuse of discretion in the determination of Surrogate's Court to remove Thompson as the administrator of the estate under SCPA 711 (2) and (8) (cf. Matter of Witherill, 37 AD3d 879, 881 [2007])[FN4]. For the same reasons, we find no abuse of discretion in the determination of Surrogate's Court to deny Thompson statutory commissions (see Matter of Witherill, 37 AD3d at 881; Matter of Quattrocchi, 293 AD2d 481, 481 [2002]; Matter of Kelly, 147 AD2d 564, 564 [1989], appeal dismissed 78 NY2d 904 [1991]).
Further, we discern no abuse of discretion in the determination of Surrogate's Court to deny Thompson reimbursement for all property expenses listed in the account, except for those amounts specifically directed in the March 2009 order entered during the administration of Shambo's estate. Initially, upon a review of the account and the supporting documentation, as well as the testimony given by Thompson at her SCPA 2211 examination, we agree with Surrogate's Court that the account was "woefully inadequate," as Thompson failed — in response to respondent's prima facie showing that the account was inaccurate — to substantiate many of the alleged property expenses. Moreover, Thompson's ongoing but sporadic payment of property expenses during her lengthy delay in selling the property caused a wasteful dissipation of estate assets, while simultaneously benefiting the property that her husband ultimately obtained. Under all of the circumstances, we find no basis upon which to disturb the denial of reimbursement to Thompson for the property expenses alleged in the account. However, we agree with Thompson that she should have been reimbursed for a $1,725 funeral expense that appears to have been overlooked by Surrogate's Court, as well as $625 in court fees (see SCPA 103 [22]; 1811 [1]; Matter of Jewett, 145 AD3d 1114, 1119-1120 [2016]). Thus, as more fully set forth below, we modify the determination of Surrogate's Court by adjusting the surcharge imposed upon Thompson accordingly.
Turning to the issue of surcharges, a surcharge is warranted where the objectant demonstrates that the fiduciary "acted negligently, and with an absence of diligence and prudence which an ordinary [person] would exercise in his [or her] own affairs" (Matter of Lovell, 23 AD3d 386, 387 [2005]; accord Matter of Billmyer, 142 AD3d at 1002; see Matter of [*4]Donner, 82 NY2d at 585). Here, given Thompson's failure to act diligently and prudently in the management of the estate's sole asset, we find no abuse of discretion in the determination of Surrogate's Court to impose a surcharge upon Thompson in an amount aimed at placing respondent in the position that it would have been in had Thompson fulfilled her fiduciary duty and sold the real property at a reasonable price, within a reasonable amount of time (see Matter of Donner, 82 NY2d at 585-586; Matter of Jewett, 145 AD3d at 1123-1124; Matter of Braasch, 140 AD3d 1341, 1342 [2016]). To that end, we agree with Surrogate's Court that, under the unique circumstances of this case, July 1, 2013 — more than seven months after Thompson received letters of administration — was a reasonable date by which the real property should have been sold (see generally Matter of Janes, 90 NY2d 41, 54 [1997]; Matter of Donner, 82 NY2d at 584-585). However, we disagree with Surrogate's Court as to the reasonable price at which the property should have been sold by this date. Because the parties consented to the November 2013 and May 2015 orders authorizing a sale of the property for $110,000, we find that $110,000, rather than $117,500, constituted a reasonable price at which the property should have been sold by July 1, 2013. In view of our determination regarding the reasonable sale price in July 2013, as well as our finding that Thompson should have been reimbursed for an additional funeral expense and certain court fees, the surcharge imposed upon Thompson must be reduced from $14,174.74 to $4,324.74.
Finally, given the minimal, if any, benefit to the estate derived from the years of legal representation provided by Rowlands & LeBrou, and their excessive request, Surrogate's Court did not abuse its discretion when it denied the payment of counsel fees from the estate (see generally Matter of Rodken, 2 AD3d 1008, 1009 [2003]). To the extent that we have not expressly addressed any of petitioners' arguments, they have been examined and found to be without merit.
Lynch, J.P., Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reducing the surcharge imposed upon petitioner Melissa Thompson from $14,174.74 to $4,324.74, and, as so modified, affirmed.



Footnotes

Footnote 1: No appeal was taken from the March 2009 order.

Footnote 2: This Court ultimately resolved the question of priority and determined that the mortgage holder, Wells Fargo Bank, N.A., had priority creditor status (Matter of Shambo, 138 AD3d 1215 [2016]). Contrary to petitioners' contention, this priority dispute in no way prevented Thompson from listing and selling the property.

Footnote 3: Although a notice of appeal was filed only on behalf of Thompson, the issues raised in the "Brief of the Appellant" concern both petitioners and the CPLR 5531 statement filed with the Court classifies both Thompson and Rowlands & LeBrou as appellants. Accordingly, a notice of appeal should have also been filed on behalf of Rowlands & LeBrou. As the parties do not raise this issue and, in the absence of an allegation of prejudice, we will disregard the error and treat the appeal as having been also taken by Rowlands & LeBrou (see Matter of Curcio v Sherwood 370 Mgt. LLC, 147 AD3d 1186, 1187 n 1 [2017]).

Footnote 4: In light of our determination, we need not address whether Thompson's removal as administrator was warranted under SCPA 711 (3).